TALBOT'S EXECUTOR, Respondent, *vs.* MEARNS, Appellant.

1. The sale bill made out and sworn to by the clerk at an administration sale, though *prima facie*, is not conclusive evidence, in a controversy between two parties claiming to have purchased the same property at the sale.

*Appeal from Montgomery Circuit Court.*

The case is stated in the opinion of the court.

*Cornick & Jones,* for appellant.

*G. Porter,* for respondent.

RYLAND, Judge, delivered the opinion of the court.

David J. Talbot sued James Mearns, before a justice of the peace, on an account for one steer at $9. The plaintiff obtained judgment before the justice for $6. The defendant appealed to the Circuit Court. During the pending of the suit in that court, the plaintiff died, and Thomas Talbot, his executor, was substituted in his stead. The plaintiff obtained judgment also in the Circuit Court, for the sum of $4 45 and costs. The defendant moved for a new trial, which being overruled, he excepted, filed his bill of exceptions, and brings the case here by appeal.

The only point for the consideration of this court is in regard to an instruction which the record states was considered as asked by the defendant, and refused by the Circuit Court.

It seems that the plaintiff's testator, David J. Talbot, and the defendant, James Mearns, had purchased some cattle at the sale of the estate of Joseph Oliver, deceased, by his administrator, in August, 1851; that Mearns contends he purchased seven head of cattle, including the steer sued for in this action. Talbot contends that Mearns carried off and has in his possession one of the steers that he had purchased at the sale. So the action depends upon the ownership acquired at that administrator's sale.

The plaintiff produced as a witness, James Nunnelly, who said he was the clerk of the sale, of the personal property of Joseph Oliver's estate, made in August, 1851. Here a paper was shown to the witness, who said it was in his handwriting, and was the sale bill of that sale; that it was correct, and that the cattle were sold as therein stated; that David T. Talbot and the defendant, Mearns, bought just such cattle as were set down in that sale bill. On cross-examination, this witness said the paper shown him was not the original paper; that his was a correct copy; that he had drawn it off the day after the sale, the original being somewhat blotted; that Mr. Best, the administrator of the estate of Joseph Oliver, assisted him in

copying. Mr. Best read from the original, while he (witness) copied; that he believed the copy was correct. They had taken much pains, though they were liable to mistakes, as other men are; but he believes there were none. In the paper first shown them, among a long list of articles sold, purchasers' names, and of prices, I find the following:

" 1 white and 1 black steer, James Mearns, - $7 50
" 2 spotted heifers, " - - 6 00
" 1 red heifer, " - - 4 25
" 1 red heifer, James Mearns, - - - - - 6 25."

The witness was then shown another paper by the defendant's counsel. Witness said, this is his handwriting, and is the original sale bill: he saw nothing on it to prove to him that it had been or had not been altered. He stated he was present when all the cattle were sold, and put them down on the sale bill as they were sold. Talbot and Mearns bought the cattle just as set down on the sale bill: he does not think Mearns bought seven head; but that he bought six, as stated in the sale bill. Defendant's counsel called witness' attention to the two sale bills. The copy stated that Mearns bought one heifer at $6 25; the original, that he bought two heifers at $6 25. After examining them, witness said he believed the original was correct, for that he and the administrator had determined to sell them in pairs, and they were so sold, when it could be done; for this reason, and because the one on one bill and the two on the other were at the same price, he believed there was a mistake in copying. On the last paper shown to the witness, which witness said was the original sale bill, I find the following items:

1 white and black steer, James Mearns, note, - $7 50
2 pided heifers, " " - 6 00
1 red heifer, " " - 4 25
2 red heifers, James Mearns, note, - - - - 6 25

In the first sale bill offered, this last item is but one red heifer; in the last, it is two red heifers; but I find the first item, in the first sale bill, is " 1 white and 1 black steer;" in

the last, it is "1 white and black steer." I have been thus particular in noticing the evidence in regard to these sale bills. There was other evidence conducing to show that Mearns purchased seven head of cattle; also, evidence conducing to show that he (Mearns) had taken the red steer of Talbot from the place of sale, when he came to drive his cattle home, after they had returned.

After the evidence had been closed, the defendant asked for the following instruction : "The description of the farm stock in the said bill of an administrator's sale, made out by the clerk of such sale, and sworn to, is not evidence in a suit between two buyers of cattle at that sale, of the color or sex of such cattle."

This the court refused to give. The bill of exceptions here states that the jury were then directed to retire with the sheriff, and, while in the act of leaving the bar, and before they were out of the court room, the defendant's counsel said to the court that he had intended, if the above instruction was refused, to ask the court to instruct " that the sale bills were not conclusive evidence." The judge replied, " that he should have refused that also." The defendant's counsel then said, " Will the court consider it as asked in the same terms as the other, except that they ' were not conclusive evidence,' and refused?" To which the court assented. To the refusal of which instructions the defendant's counsel excepted.

There is no error in refusing to give the first instruction, or the instruction as it was asked at first ; and, had the record showed nothing else, its judgment would have been affirmed at once. The instruction, as amended, should have been given ; for, though such sale bills, when returned, may be evidence, yet they are not conclusive evidence ; they are only *prima facie* evidence for or against an administrator even, and surely, not more or stronger against third persons.

Other evidence may be introduced to vary the effect of such sale bills, inventories and appraisements. These sale bills cannot be conclusive as to third persons, either as to the

Talbot's Ex'r *v.* Mearns.

color, sex or price even of stock sold. Evidence may be intro-
duced to change the effect of such sale bills, in such matters.
But the trouble before this court was, to see how the refusal to
give the amended instruction could operate against the defend-
ant. Were the jury present, or had they left the room? Were
they in the hearing of this conversation between the court and
the defendant's counsel?

We must, from the record, come to the conclusion that the
jury had not retired; they were leaving or in the act of retir-
ing from the bar; but we must infer, had not retired. They
then heard this instruction asked and refused, and were in a
condition to be misled by this act of the court. We must,
therefore, reverse the judgment. We suggest to the courts the
necessity, when instructions are asked, to see that the law is
properly laid down to the jury, and not to content themselves
by simply giving or refusing the instructions as asked. The
object of the courts should be not to get clear of laying down
the law, by refusing to instruct, especially when instructions
are prayed for which, in part, contain the law, and which
obviously show a desire to have the jury properly instructed;
although in the hurry or for other reasons the counsels have not
properly attended to the framing and phraseology of the in-
structions. Let the lower courts place the law fairly before the
jury, in a few, plain, forcible, pointed and pithy instructions,
and there will be much less appealing—much less dissatisfac-
tion with their decisions. They should declare the law whenever
called upon, in order to assist the juries in coming to a proper
determination. The conduct of the judge, in this case, was, to
say the least, unusual. He ought to have instructed the jury
in regard to the evidence arising on the sale bills: he was asked
to do so, and he should not have neglected it. Though an
improper instruction had been asked and refused, the jury were
still in the dark as to the effect, legally, of these sale bills.
His province was to aid them by instructions. And again, why
state in the bill of exceptions the fact of the jury being about
to retire, so as to render uncertain before this court whether

they heard the instructions asked for or not; the Circuit Court must have known whether the jury was before the court or not—in hearing, or not.

Upon the whole case, this court concludes it most compatible with the rights of the parties that there should be a new trial. The judgment of the Circuit Court is therefore reversed, and the case remanded; Judge Scott concurring, he being the only other judge on the bench when this cause was submitted.