## PEOPLE *v.* BIDDLECOME.

WITNESS, MOTIVES OF, INQUIRY INTO—IMPROPER QUESTIONS TO.—A witness for the people on a criminal trial, having testified on cross-examination that he had a motive for watching deceased and defendant, charged with the murder of deceased, was permitted to answer a question put on redirect examination, over the defendant's objection, as to what his motive was: *held,* error; that the question was not proper redirect examination, and the motive of the witness was immaterial, beyond the fact that it served to fasten upon his mind the particular circumstance to which he had testified; that the question was too general, and per-

mitted the witness to give in evidence, as he did, hearsay and other incompetent matter.

WHERE EVIDENCE IS RECEIVED WHICH IS ADMISSIBLE FOR A PARTICULAR PURPOSE AND NOT FOR ALL PURPOSES of the trial, it is error for the trial court, when requested, to refuse to restrict the evidence to the legitimate purposes for which it is admissible.

EVIDENCE INCOMPETENT, WHEN INJURY PRESUMED FROM ADMISSION OF.— When, in a criminal case, incompetent evidence has been received and the course pursued on the trial in relation thereto is such that it is apparent undue prominence may have been given to it by the jury, it will be presumed that injury resulted from its admission where there is nothing in the record showing the contrary.

IT IS NOT ERROR TO EXCLUDE FROM EVIDENCE AN UNAUTHENTICATED COPY of a butcher's account, offered for the purpose of fixing the date of a transaction to which the witness producing the copy has testified, and which is offered solely to corroborate the witness.

INSTRUCTIONS SO FRAMED THAT THEY TAKE FROM THE JURY THE FACTS and the weight of the evidence are never proper, unless upon points entirely unsupported by proof.

IT IS NOT ERROR TO REFUSE AN ENTIRE INSTRUCTION CONTAINING SEVERAL PROPOSITIONS, ONE OR MORE OF WHICH ARE ERRONEOUS and the remainder unobjectionable, nor to refuse an instruction once given in substance.

INSTRUCTION DEFINING OFFENSE IN THE LANGUAGE OF THE STATUTE.—An instruction is not erroneous which charges the jury, in relation to the offense with which the defendant in a criminal case is accused, in the language of the statute defining the offense, without entering into an explanation of the meaning of the terms used by the statute.

THE EVIDENCE IN THIS CASE EXAMINED AND HELD TO SUPPORT the verdict, because the appellate court could not say that the verdict was the result of passion or prejudice.

APPEAL from the third district court. The opinion states the facts.

Sutherland & McBride, for the appellant.

Zera Snow, Assistant U. S. Attorney, for the respondent.

EMERSON, J.:

The defendant was indicted for the murder of one Charles Jensen, alleged to have been committed on the twenty-sixth of November, 1879. He was convicted of murder in the first degree, and upon the recommendation of the jury, as provided in the statute, was sentenced to be imprisoned at hard labor in the penitentiary for life. He appeals to this court, upon various assignments of error, from the judgment and the order denying his motion for a new trial.

The deceased was last seen alive by several witnesses on the twenty-sixth day of November, 1879, in company with the defendant. From this time on he was missed from the neighborhood. There seems to have been some talk of and perhaps some search made for him. His body was not found until February, 1881, buried under not over fourteen inches of soil, and not far from where both the defendant and deceased had lived. One of the witnesses who assisted in exhuming the body from where it was found testified as follows :

"We found the body but slightly buried, not even six inches of soil over the body, and part of the clothing was exposed at the surface; the body had been buried face downward. There was only the skeleton left, but the frame was intact, but separated some by handling when dug up. I did not particularly examine the clothing. The coat was yellow ducking, lined with light colored blanket. Overalls of the same material. The body was taken to Stockton, and there the coroner held an inquest. There was a patch on the knees of the overalls. We found a belt on the body and a knife in the pocket; these have been in my possession ever since. [Produces them before the jury.] I found a bullet-hole on the back part of the skull on the left side, and the skull being removed from the trunk, a bullet considerably battered dropped out, which I kept and here produce. [Produces it, and shows it to the jury.] The body was found in Tooele County, in Utah Territory. I was present at the trial of defendant before a justice of the peace."

Witness was asked if he knew of any difficulty between defendant and Jensen about a gun and saddle; he replied: "I heard defendant say he had bought the gun of a person whom I did not know."

The body was identified by the clothing and articles found with it.

There was testimony, on the part of the prosecution, of admissions of the defendant that he had "fixed," or killed, the deceased. The prosecution attempted to prove by several witnesses that there had been a difficulty between the defendant and the deceased.

The first point urged on behalf of the defendant on this appeal refers to the rulings of the court in connection with

the testimony of one William Bracken, a witness on the part of the prosecution. The testimony and rulings were as follows:

"I am postmaster at Rush Lake. I know defendant, and I knew Charles Jensen. I saw him on the twenty-sixth day of November, 1879. He had been gone for some time, and he returned to Rush Lake I think on the seventeenth day of November, 1879, or that was the first time I saw him. He went to Frisco between the first and tenth of May of that year. I don't know as I saw him again after the seventeenth of November, until the twenty-sixth. On that day I saw him and the defendant together."

On cross-examination, said witness said: "I am not on friendly terms with the defendant. I saw Jensen and defendant together in front of my store about 10 A. M., talking together, and saw them together again about the same place about three P. M. I watched them closely."

Counsel for the defendant asked witness if he had any motive for watching or that led him to notice particularly. Witness said he had; and was about to explain his reason, when he was stopped by the defense. Counsel for the people insisted that the witness having stated that there was a reason why he watched, he had a right to explain what it was, also as it then stood the jury might infer that he had some sinister motive. The question was there asked by the people's counsel. "What induced you to notice particularly the circumstance of seeing Jensen and the defendant together on the twenty-sixth day of November, 1879?"

The defendant's counsel objected to said question, because—1. The people have no right to ask the question to test the witness' recollection, for that is the privilege solely of the party cross-examining; 2. The question is general, and would leave the witness to state hearsay or other incompetent matter.

The court directed that the witness state any fact or circumstance which existed to impress the circumstance on his mind.

The witness answered: "I knew there was a difficulty between the accused and Jensen, and I expected to see a fight."

Defendant's counsel then asked witness if he ever saw the parties together having difficulty.

A. No.

Q. How did you know they had difficulty except by hearsay?

A. Jensen told me so.

Defendant's counsel move to strike out this answer, and also that to last question on the part of the people, because he states a fact not competent, namely, a statement of Jensen.

The attorney for the people objected to the striking out, and the motion was denied. Defendant's counsel then and there excepted. Whereupon defendant's counsel asked the court to caution the jury that the witness' statement that Jensen told him there was a difficulty, was only evidence that witness had that circumstance to induce him to watch them, and was not evidence that there was a difficulty between them, which caution the court refused to give. And to which the defendant's counsel excepted.

The objection to the question asked by the prosecution should have been sustained. He was their witness. The fact they sought to establish by him, and for which he was ostensibly called, had been squarely and unequivocally testified to. On the cross-examination, he had stated that he had a motive for watching the parties. What his motive was, beyond the fact that it served to fasten upon his mind the circumstance about which he had testified, was immaterial. The counsel for the defendant seemed content to leave the matter there, and the prosecution should have been equally so. The answer of the witness to the former question did not give the prosecution the right to put and have answered the question objected to. It in no sense related to new matter drawn out by the cross-examination. The question itself, had it been otherwise competent, was too general, and left the witness to state, as he did state, hearsay and incompetent matter.

It follows, of course, that after the answers on the redirect examination the defendant's motion to strike out should have been granted. And failing in this, beyond all question the limitation as to the effect of the testimony, and the caution counsel for the defendant asked to have given to the jury,

should have been granted.   The answer was clearly inadmissible as evidence of any difficulty between the defendant and the deceased.   That there had been a difficulty between them, on or about that date, the prosecution seemed anxious to prove, probably to furnish a motive for the alleged crime. The course pursued at the trial with this witness, and especially the refusal of the court to withdraw from the attention of the jury the statement about the difficulty, as any proof that there ever was one, gave to this testimony an undue prominence, and there being nothing in the record showing the contrary, we must presume that injury resulted from its admission.

This error furnishes sufficient ground for the reversal of the judgment.

It was not error to exclude the "butcher's account," offered for the purpose of fixing a date, and thus corroborating the testimony of Mrs. Biddlecome, the mother of the defendant, and a witness for him.

She testified that he was at home on the twenty-fourth, twenty-fifth, and twenty-sixth of the month, and that on the twenty-fourth he had killed an animal, and on the twenty-fifth taken the carcass to one Mitchell, a butcher, who gave them credit for it on account.

The witness produced a paper writing, and said: "I received this from Mr. Mitchell, the butcher."   Offered in evidence.   Objected to by the people's attorney, and ruled out by the court.   The objection stated by the people's attorney was, the paper was not signed by Mitchell, and it does not appear whether he wrote it.   Objection being sustained by the court, the defendant's counsel then and there excepted to the ruling.

The paper writing offered purported to be an account between the witness and said Mitchell, commencing on November 25, 1879, and ending on the thirtieth of the same month.   Among other items, and the only item of credit, is one under date of November 25th, of one hundred and twenty-five pounds of beef.   That the paper offered was a copy there can be no doubt, for the witness swears that she procured it of Mitchell, and it bears date at another place than that where the parties lived at the time the transaction occurred,

and on September 6, 1881. It needs no argument or citation of authorities to demonstrate that this unauthenticated copy of an account was inadmissible for any purpose.

The refusal of the court to give the following requests on the part of the defendant is relied upon as error:

" 4. There is no evidence in this case that the defendant shot Jensen.

"5. There is no evidence that the defendant ever molested or premeditated the shooting or killing of Charles Jensen.

" 6. There is no evidence that the defendant ever had any malice or ill feeling against Jansen. The jury have no right to find there was ill feeling, or that there was a dispute between them from any evidence of a rumor to that effect, or from proofs of any declarations made by Jensen, nor is it proper for the jury to take into consideration as evidence any such rumor or declarations.

" 8. The jury have no right to convict unless the testimony convinces them of the defendant's guilt beyond a reasonable doubt. They should not convict unless the proof is so full and convincing that it excludes or disproves every reasonable hypothesis, except that the defendant is guilty.

" The proof must be, then, sufficient and convincing that Jensen is dead, and came to his death on the twenty-sixth day of November, 1879 ; that the remains found in February, 1881, were his ; that the defendant shot and killed him, and that the defendant committed the act maliciously, and premeditated it."

And the following: " Rumor is not evidence, nor are the declarations of the deceased not known to have been made to or in the hearing of the defendant; and the jury are instructed that they can not find any fact upon such testimony."

All the foregoing requests were refused, except as they were otherwise given in the charge.

The fourth and fifth requests were properly refused, because the effect of giving them would have been to take the entire case from the jury. There was some evidence relative to the point covered by each request. By the statute, the jurors are made the sole judges of the facts and the weight of the evidence. These requests, however, sought to have the

court itself pass upon the weight of this evidence, and in effect directs a verdict of acquittal. Requests so framed are never proper, unless upon points entirely unsupported by proof. This applies equally to the first sentence of the sixth request;. The balance, however, was unobjectionable, and might very properly have been given. But when a repuest to charge contains several propositions, one or more of which is erroneous, and the balance unobjectionable, it is not error for the court to refuse the whole request. The better practice, however, is to call the attention of counsel to the objectionable matter, that he may rewrite it if he so desires, or the court may modify it so as to make it conform to his idea of the law as applicable to the case, but he is not bound to do this, and it is not error if he does not.

The substance of the eighth request had already been given by the court, in as full and complete terms as those embodied in the request; it was therefore not error to refuse to give it. The last request, which is not numbered , should have been given. This was the final and closing effort on the part of the defendant to get rid of the effect of the testimony of the witness Bracken, which had been improperly admitted. It was a correct statement of the law as applied to the declarations in evidence in this case.

Upon the argument, it was claimed for the defendant that the definition of murder as given in the instructions by the court was incomplete, the element of unlawfulness being entirely omitted. This criticism is not warranted by the facts. In the charge the court used this langauge: "By our statute, 'murder is the unlawful killing of a human being, with malice aforethought,' and is divided into degrees, the first and second degree;" and then proceeded to define the different degrees.

It is claimed for the defendant that the verdict is not sustained by the evidence. In the case of *People* v. *Clauson*, 2 Utah, 502, this court held that " before this court will set aside a verdict on appeal, on the ground that the verdict is contrary to the evidence, it should appear either that there is an absence of evidence against the prisoner, or a decided preponderance of evidence in his favor. So much depends upon the demeanor of witnesses on the stand, the manner in which their

testimony is given, and which can not be brought in or made a part of any record, that the statute has very properly made the jury the sole judges of the weight to be given to it.   The record in this case does not show such an absence of evidence against the defendant, or such a decided preponderance in his favor, that we can say that the jury were influenced by passion or prejudice.   The evidence was conflicting..   It is evident that the jury, who are made by the statute the sole judges of this credibility, did not believe some of the defendant's witnesses."   This language is applicable to the case at bar.   There was no error in refusing to grant a new trial on this ground.

The alleged misconduct of one of the jurors is not sustained by the evidence in relation to that matter, and hence furnished no sufficient ground for a new trial.

But for the error above mentioned, the judgment of the third district court is reversed, and a new trial ordered.

HUNTER, C. J., concurred.

TWISS, J., concurring:

I concur in the reversal of this case, but not upon the grounds given in the opinion of the majority of the court.   The first part of the eighth instruction was, in substance, by the court, in its charge, properly submitted to the jury.   The clause, "They should not convict unless the proof is so full and convincing that it excludes or disproves every reasonable hypothesis, except that the defendant is guilty," was not, either in form or substance, given to the jury.   Refusing to give this in substance, as requested, was in my opinion error.   The authorities on this point, it seems to me, are conclusive, and for this reason I am of the opinion that the case is properly reversed: *Commonwealth* v. *Webster,* 5 Cush. 295, 319; Roscoe's Crim. Ev., 7th ed., 16, and note.

The last request of the defendant, which is not numbered, was properly refused.   Had it been given, the jury would have been instructed that "rumor is not evidence," but not told what "rumor" is, or what particular evidence or testimony was thereby referred to; they would have been left to guess, or determine as best they could, what if any rumor

there was in evidence.    Such an instruction, instead of giving light and guidance as to the particular evidence sought thereby to be brought into question, would have tended to mystify, confuse, and involve all the evidence in perplexity and confusion; and therefore was properly refused.    What is rumor, might have been, under the circumstances of the case, a question, in the mind of the jury, of great difficulty; and the words, "nor are the declarations of the deceased not known to have been made to or in the hearing of the defendant," do not necessarily make clear to the jury what particular testimony or words are struck at by the proposed instructions.    "When instructions are asked, they should be precise and certain, to a particular intent, that the point intended to be raised may be distinctly seen by the court, and that error, if one be made, may be distinctly assigned:" *United States* v. *Bank of Metropolis*, 15 Pet. 377–406; *McKinney* v. *Snyder*, 78 Pa. St. 497; *Talbert* v. *Mearns*, 21 Mo. 427–431; *Rollins* v. *Cate*, 1 Heisk. 97.

It is the province and duty of the court to decide upon the admissibility of evidence, and if improper evidence is admitted, it is error, for which the party thereby aggrieved has a remedy; but when once admitted, it is for the consideration of the jury until withdrawn by the court; and when the court undertakes to withdraw such evidence, it should be so clearly and distinctly described as to leave no room for doubt or conjecture.

The question whether the court below erred in refusing to caution the jury as requested by counsel for the defendant, as to the testimony of Bracken, is one upon which I express no opinion, except that the testimony is near the boundary line between what is included as the *res gestæ* upon one side and hearsay upon the other.