No. 2325.

John Gilleland *v.* The State.

1. Practice—Continuance—Exception.—It is a settled rule of practice in this court that the refusal of a continuance will not be revised in the absence of a bill of exceptions.

2. Same—Evidence.—Bill of Exception taken to the admission of evidence should clearly disclose the nature of the objection; otherwise it is not entitled to be considered by this court. Objections not affirmatively stated in a proper bill of exceptions are to be treated as waived.

3. Same—Flight of an accused, after indictment and release on bail or recognizance, is a fact which may be proved for the State by showing the forfeiture of the bail bond or recognizance.

4. Theft—Charge of the Court.—The trial court, in a theft case, charged the jury as follows: "Upon the trial of one charged with the theft of a horse, the possession of the horse without a written bill of sale containing a specific description of the horse is prima facie evidence against the accused that the possession is illegal." Held erroneous, as upon the weight of evidence.

5. Same—Fact Case.—The trial court charged the jury as follows: "When one charged with theft is found in possession of the stolen property, if he gives a reasonable explanation of his possession of the property, it then devolves upon the State to show such statement to be false; otherwise the accused must be acquitted." See the opinion and the statement of the case for evidence which, in view of the law thus correctly expounded by the charge, is held insufficient to support the conviction.

Appeal from the District Court of Goliad. Tried below before the Hon. H. C. Pleasants.

The conviction in this case was for the theft of a horse, the property of Amos Rowland, in Goliad county, Texas, on the eighteenth day of February, 1886. A term of five years in the penitentiary was the penalty assessed.

Amos Rowland was the first witness for the State. He testified that in February, 1886, he lived in Llano county, Texas. On the night of the eighteenth day of that month, the horse described in the indictment, which was the property of the witness, and which was then in his possession, was stolen from the witness's pasture, situated in the said Llano county. That horse was one of three horses which the witness had in that pasture on that night. Witness missed his said horse on the morning of

February 19, 1886, when he discovered that the gap in the fence surrounding his pasture was down. The tracks showed that three horses entered the pasture at the gap, and four went out. The tracks also showed that one of the horses leaving the pasture was a led horse, as his tracks appeared sometimes on one side and sometimes on the other of a straight trail left by another horse. Witness searched several days for his horse, but failed to find him. He then heard of the sudden departure from the county of a man named Gilleland, who had previously lived in the neighborhood. He further learned that Gilleland's parents lived in Goliad county, and thereupon he wrote to the sheriff of Goliad county, giving a description of the horse, and the name of the defendant as the man who had recently left Llano county. Within a short time the witness was notified by the sheriff of Goliad county that he had the horse in his possession and Gilleland in jail. Witness then went to Goliad county and found his horse in the possession of George Stormfeltz, the sheriff of said county. That horse was taken from the witness's pasture in Llano county, about two hundred and fifty miles distant from Goliad, without the knowledge or the consent of the witness. The witness had never seen the defendant to know him, until he saw him in the Goliad county jail, at the present term of the court. Witness denied that he ever told Fulcrod or Tilly, or any other person in Goliad county, that he did not believe the defendant was guilty of this theft. He did say, however, to them and other parties, that he believed Perry Swift was the principal leader in the perpetration of the theft, and that, if defendant would turn State's evidence, and his testimony would secure the conviction of the other two persons who participated in the theft, he, witness, would be content.

R. H. Adams testified, for the State, that in February, 1886, he lived in Llano county, Texas, with Mr. Walton, the uncle of the defendant, and was well acquainted with the defendant. At the time of the theft of Rowland's horse the defendant was living at his uncle's house, in Llano county. He had been there about a month. The defendant then owned neither horse, saddle nor bridle, and was using a horse that belonged to one Robinson, who lived on the Llano river. Mr. Walton, the defendant's uncle, lived about seven miles distant from Rowland's pasture. Defendant borrowed the witness's saddle on the eighteenth day of February. On the next morning one Perry Swift brought the saddle back to the witness. The defendant did not come back

to Walton's house after he left on the eighteenth day of February. Witness did not know where he went to, nor what use he made of witness's saddle while he had it in possession. He merely asked the loan of the saddle, and witness loaned it to him without asking him any questions.

R. F. Winn testified, for the State, that he lived in Llano county, Texas, about two miles from the residence of Mr. Walton, the uncle of the defendant. A saddle was stolen from the premises of the witness on the night of February 18, 1886. Witness had seen the defendant in that neighborhood prior to that time, but had not seen him there since. Witness did not know what, if any, business the defendant pursued in Llano. He did not know who stole his saddle.

George Turner testified, for the State, that early in March, 1886, he, at the request of Sheriff Stormfeltz, of Goliad county, went to the place where the defendant then was, in Goliad county, arrested him and took possession of the horse then in his possession, which corresponded with the horse described to witness by the said sheriff. Witness arrested the defendant about eight o'clock in the morning, while the defendant was in the act of saddling the horse. He delivered the defendant and the horse to Sheriff Stormfeltz, who subsequently delivered the horse to Rowland. When witness arrested the defendant, defendant said that he purchased the horse from a man who lived near Austin. He did not designate the particular place near Austin where he purchased the horse, nor did he mention the name of the man from whom he purchased, nor did he state the price he paid for the animal.

Sheriff Stormfeltz testified, for the State, that on or about March 10, 1886, he received a letter from the State's witness Rowland, of Llano county, describing a horse which had been recently stolen from him, and giving the name of the defendant. Witness thereupon dispatched George Turner to a place in Goliad county where the defendant was said then to be, for the purpose of arresting the defendant and recovering the horse. Turner returned with the defendant and a horse which corresponded with the horse described by Rowland in the letter. Rowland afterwards identified the horse as his property, and as the same referred to by him in his letter, and witness delivered the horse to him. Defendant was released on bail soon after his arrest. His bond obligated him to appear before the grand jury at the succeeding term of the district court. He, however, left the

country before the court convened, and before indictment was returned against him, and his bond was forfeited and subsequently was collected by witness. The witness, in May, 1887, heard of the defendant in Robertson county, Texas. He thereupon procured a capias to Robertson county, upon which capias defendant was arrested, and witness sent for and got him, and had since held him in custody. Defendant's father was a citizen of Goliad county. The State concluded its case by introducing in evidence the proceedings of the court upon the forfeiture of the defendant's appearance bond.

Abner Ricketson was the first witness for the defense. He testified that in February, 1886, he lived in Llano county, Texas, near the residence of Mr. Walton, the uncle of the defendant. On a day in said February, not earlier than the nineteenth nor later than the twenty-second, the witness, defendant, Pete Rose and Joe Ellis, then riding along the public road near Perry Swift's place in Llano county, met a man named Norton, who lived near Austin, and who was leading a horse which he offered for sale. The defendant bought that horse from Norton, paying him therefor the sum of seventy-five dollars, ten dollars of which the witness loaned the defendant, as defendant had but sixty-five dollars with him. Norton did not execute a bill of sale to cover the horse, nor did he say where he got the horse. Perry Swift was near but not present at the transaction, but he saw the trade, and saw the possession of the horse delivered to defendant by Norton. Witness, defendant, Rose, Ellis and Norton presently overtook Swift and went with him to Swift's house, where Swift was told of the trade, and the trade was discussed. Swift, who was the witness's brother-in-law, then lived about two miles from Walton's place, and between seven and eight miles from Rowland's place. The horse purchased by the defendant from Norton was the animal subsequently claimed by Rowland. At the time of the trade, and when witness loaned the defendant the ten dollars, his acquaintance with defendant was very slight. He knew that defendant was living at Walton's, but had not "run" or associated with him prior to that time. The witness did not see defendant in Llano county after the transaction between him and Norton; did not know where he went to, nor had he ever been repaid his ten dollars. He did not then know that defendant's father lived in Goliad county. Witness had never made an effort to collect his ten dollars, and

never, after the transaction, endeavored to find the defendant or ascertain his whereabouts.

William Gilleland, the defendant's brother, was his next witness. He testified merely to his untiring efforts to secure the attendance of Rose, Ellis and Swift upon this trial, to testify to the purchase by defendant of the horse from the man Norton. Witness had a conversation with the State's witness, Rowland, in Llano county, in the course of which conversation Rowland said that he did not believe that defendant stole the horse, and that he wanted the defendant to do no more than tell from whom he got the horse, so that he could prosecute the thief.

Phillips Fulcrod testified, for the defense, that pending the trial he met the State's witness Rowland at the foot of the court house steps, in Goliad, and engaged him in conversation about this case. In the course of that conversation Rowland said, in effect, that he did not believe John Gilleland stole his horse, and that he asked of Gilleland no more than that he tell who he got the horse from. William Tilly testified substantially as did Fulcrod, and the case was closed.

The motion for new trial raised the questions discussed in the opinion.

*J. L. Hill*, for the appellant.

*W. L. Davidson*, Assistant Attorney General, for the State.

White, Presiding Judge. No bill of exception having been saved to the overruling of defendant's application for continuance, he is not entitled to have the matter reviewed in this court. The last decision to this effect is in Scott's case. (23 Texas Ct. App., 522.)

There is but a single bill of exception in the record, and that was saved to the admission of testimony over objection of defendant. What the objection was is not stated in the bill. The rule is that the bill must set forth the objections which were interposed, and that objections not affirmatively presented are deemed to have been waived. (Bryant v. The State, 18 Texas Ct. App., 107, and authorities cited.) Independently of this rule, the evidence, we think, was clearly admissible as a circumstance going to show flight and an effort to avoid a trial by the defendant. Flight of a defendant after indictment, and after his release on bail or recognizance, by showing the forfeiture of the

same, is a fact which may be proved by the State.    (Hart v. The
State, 22 Texas Ct. App., 563; Aiken v. The State, 10 Texas Ct.
App., 610; Gose v. The State, 6 Texas Ct. App., 121.)

In the fourth paragraph of the charge, the court instructed the
jury that, "upon the trial of one charged with the theft of a
horse, the possession of the horse without a written bill of sale
containing a specific description of the horse is prima facie evi-
dence against the accused that the possession is illegal."    Such
an instruction has repeatedly been denounced by this court as
decidedly erroneous, it being upon the weight of evidence.
(Willeys v. The State, 22 Texas Ct. App., 408, and numerous au-
thorities cited.)

A special instruction, given at the instance and request of de-
fendant, it is true, did modify the vice of the charge, and perhaps
might with some reason be held to have cured it.    (Garcia v. The
State, 12 Texas Ct. App., 336.)    Still, this is mere speculation, at
best, and, had an exception been reserved to it, notwithstanding
the giving of the requested instruction, we would, under well
settled rules, have been compelled to have reversed the judgment
on account of the error.

In paragraph two of the charge of the court, the jury were
specifically and correctly instructed that, "when one charged
with theft is found in possession of the stolen property, if he give
a reasonable explanation of his possession of the property, it
then devolves upon the State to show such statement to be false;
otherwise the accused must be acquitted."    Applying this charge
to the facts as proven on the trial and shown in the record, we
find that when defendant was first found in possession of the
stolen animal by the deputy sheriff who was sent to arrest him,
he told the officer that "he had bought the horse from a man who
lived near Austin.    He did not say what the man's name was, or
the price he paid for the horse, or where he bought the horse."
This explanation in itself is entirely reasonable.    Not only so,
but defendant proved its truth by his witness Ricketson, who
testified with minute circumstantiality to the transaction, when
and where it took place, the name of the party who sold defend-
ant the horse, and the price paid by defendant, together with the
names of several other parties who were present and also wit-
nessed the sale and purchase.

This explanation by defendant, and the testimony offered by
him to support it, have not been disproved nor shown to be false.
We are of opinion the verdict and judgment are against the

evidence and charge of the court; wherefore the judgment is reversed and the cause remanded for another trial.

*Reversed and remanded.*

Opinion delivered January 7, 1888.