## UNITED STATES, RESPONDENT, *v.* JOHN HARRIS, APPELLANT.

CRIMINAL LAW.—UNLAWFUL COHABITATION.—The crime of unlawful cohabitation is proved by showing that as to the legal wife, she lives in defendants vicinity and bears his name, that he maintains and supports her household and visits her for that purpose, the cohabitation with the polygamous wife being admitted.

ID.—ID.—PRESUMPTION AS TO LEGAL WIFE.—If a man visits his legal wife while she lives in his vicinity and bears his name and her household is maintained by him, the presumption of law is conclusive that the man visits the wife as her husband and in no other character.

APPEAL.—CONFLICT IN TESTIMONY.—Where there is a substantial conflict in the testimony, the appellate court will not reverse the judgment on the ground that the verdict is contrary to the evidence.

APPEAL from a judgment of the district court of the first district, and from an order refusing a new trial. The opinion states the facts.

*Mr. S. R. Thurman* and *Mr. George Sutherland,* for appellant.

*Mr. George S. Peters,* for respondent.

BOREMAN, J.:

The defendant was indicted for the crime of unlawful cohabitation; was tried and convicted. He made his motion for a new trial, which, being overruled, he has appealed to this court from the judgment and from the order overruling the motion for a new trial. It is assigned for error that the court charged the jury as follows: "If in this case, or any other, the legal wife of the defendant lives in the same vicinity with him, in a household maintained in part by him, that is cohabitation with his legal wife. It is absolutely and conclusively cohabitation with his legal wife." The objection to this language of the court is that proof that the legal wife lives in the vicinity of the defendant

and he contributes to her support, is not sufficient to warrant a conviction for the offense charged. The language quoted is but a small extract—a mere part of one sentence of the charge of the court. It does not fairly represent the lower court. All that the court said upon the point should have been given. The residue of the charge upon that point may have given a different meaning from the extract which is objected to. There is no warrant in the law for cutting out a part or a whole of a sentence of a charge and making objections thereto. The whole of a charge bearing upon the objectionable part must be considered with it. We have heretofore called attention to this practice. The appellate court will consider the whole charge together, and will not reverse when the law has been thus properly presented to the jury. The other parts of the charge, bearing upon the portion objected to and including it, read as follows: "The prosecution is brought under the act of Congress of the United States, which was approved March 22, 1882, commonly known as the 'Edmunds Law,' and the section under which it is brought reads as follows: 'That if any male person, in any territory, or other place where the United States have exclusive jurisdiction, hereafter cohabits with more than one woman, he shall be deemed guilty of a misdemeanor, and on conviction shall be punished,' etc. The section of the statute under which the prosecution is brought is to be construed with the balance of the act, and is intended to prohibit a man, who has formerly entered into the plural marriage relation, from actually or apparently before the world continuing the plural marriage relation. It aims at the wrongful example or appearance, as well as the actual continuance, of the polygamous relation, without reference to what may actually take place with his plural or polygamous wife. Therefore if you believe beyond a reasonable doubt, from the evidence given before you, that before the earliest date mentioned in this indictment, to-wit, October 1, 1884, the defendant entered into marriage or assumed marriage relations with the two women named in the indictment, and that within the time covered by the charge he continued such relations with both of said women, by living

with, holding them out, or doing any of the acts which usually characterize the relation of husband and wife, and that it was done by virtue of such marriage relation, then he would be guilty as charged; and it is not necessary to show that he actually had intercourse with either of the the wives within the period named. If you find that the defendant was married to Ann Harris, and that the marriage was legal, and that he afterward entered into a marriage relation with the other woman named Emma Ainge Harris, and that at the time he entered into the second marriage he was living with the woman first named as his wife, then the presumption would be that he was married to her and that she was his wife. Now, gentlemen, in proving cohabitation with two women, the rule is different as to proving cohabitation with the legal wife and with the illegal wife, because the law presumes that a man does what it is his legal duty to do; that is, cohabits with his legal wife. If in this case, or any other, the legal wife of the defendant lives in the same vicinity with him, bearing his name, in a household maintained in part by him; that is cohabitation with his legal wife. It is absolutely and conclusively cohabitation with his legal wife; because, whatever he does with her is done as a husband. He is her husband, and he cannot throw off the obligation that he bears to her voluntarily; and it would make no difference that they have made an agreement that they will separate and go apart, because it is against public policy, and against the policy of the law under which this prosecution is brought to encourage the practice of a man leaving his legal wife and living with another wife. It is also against the policy of the law to practice the maintaining of other wives than his legal wife. So, if you find in this case, beyond a reasonable doubt, that during the time covered by the indictment he was in the habit of contributing to the support of his legal wife, who lived in his vicinity and bore his name openly before the world, that would be cohabitation within the meaning of this act. When you come to cohabitation with the illegal wife, then the presumptions are all against it. All legal presumptions are against cohabitation with the illegal wife," etc. Subsequently the jury returned into

court for further instructions, and, in answer to their inquiry, the court said: "As I told you in the general charge, the charge against the defendant is for cohabiting with two women. Now, in this case, as I understand the argument of counsel and the testimony of defendant, cohabition with the plural wife, or illegal wife, is not denied; so the question is as to whether cohabitation with the legal wife is shown. If you find that, at the time he married the second wife he was living with a wife, at that time, that he was living with a wife and maintaining a household, the presumption would be that that was his legal wife, because the presumption would be that their relations were proper, and there is a presumption that a man lives and cohabits with his legal wife—a presumption just—simply upon proof that she is his legal wife and is alive—there is a presumption that he cohabits with her. I charged you before and I charge you again that proof that the legal wife lives in the vicinity of the husband, where he is living with his illegal wife, bearing his name openly and maintaining a household, and he is maintaining her or contributing to her support, and visiting her for that purpose; that is cohabitation with her. That amounts to cohabitation. That is upon the theory that it is the duty of the husband to cohabit with his wife. Their relations are legal. They can't agree to separate. No agreement between husband and wife can resolve the marriage relation. It is against public policy and the law that any such thing should be permitted; it is against the public law to separate by agreement and live with some other woman. If the legal wife was living in a household, bearing his name, maintaining a household, and he was furnishing it and visiting her for that purpose at all, he visited her as her husband, she being his wife, and that would amount to cohabitation with her. That is what I intended to say and supposed I did say. * * * Of course it requires proof that he contributed to her support." Mr. Sutherland, one of the attorneys for the defendant, remarked: "I didn't understand your honor to charge the jury that the presumption arising from marriage is conclusive cohabitation?" In reply the court said: "No, I don't mean to say that in a case if the only

testimony was that a man married 20 years ago, and the proof stopped right there, it would be presumptive evidence and sufficient of itself to show that he was still cohabiting with her; but when that is followed by proof that she is still alive, and lives near him, and bears his name, living in a household that he maintains and visits; that is cohabitation. I don't think a husband can say, when his legal wife is living in his vicinity, bearing his name, and he is maintaining the household she lives in—I don't think that because he has illegal relations with some other woman he can be heard to say that he does not associate and cohabit with his wife when this is shown." A juror asked as to the effect of defendant's contributing anything, however small, to his wife's support. The court said: "If he contributes, and visits her for that purpose, that is sufficient. Now, remember, all this must be within the time covered by this indictment," etc. The defendant's attorney requested the court to charge that the question whether he lived and cohabited with his first wife was one of fact for the jury, etc. The court in reply told the jury as follows: "Yes, it is a question of fact; all these things are questions of fact for you to determine. But no matter what they have agreed between themselves, or what may be the understanding, if this condition of things I have mentioned exists, if the wife is living in the vicinity of the husband, maintaining a household, bearing his name, and he contributes to her, maintaining her household, and visits her for that purpose, it is cohabitation for that purpose." To an inquiry by the assistant district attorney, in reply the court said: "Mr. Evans, I charged the jury in the *Clark Case,* distinctly, that whenever the husband visited the wife that he visited her as his wife, and he could not be heard to say that he visited her in any other capacity, and I mean to say that same thing to this jury; that if the husband visits his wife, she is his wife—that that is the relation between them, and they cannot by agreement sever it."

The supreme court of the United States has said that "it is the practice of unlawful cohabitation with more than one woman that is aimed at,—a cohabitation classed with polygamy and having its outward semblance. It is not, on

the one hand, meretricious, unmartial intercourse with more than one woman. General legislation as to lewd practices is left to the territorial government. Nor, on the other hand, does the statute pry into the intimacies of the marriage relation." *Cannon* v. *U. S.*, 116 U. S., 72, 6 Sup. Ct. Rep, 287. It is not necessary therefore to prove what occurs in the intimacies of the marriage relation. It is only necessary to prove that which has the outward semblance of polygamy. That is substantially what the court in the case at bar told the jury. It said in effect that if the jury believed from the evidence, beyond a reasonable doubt, that the defendant had a wife when he entered into the illegal relationship with Emma, and that at that time he lived and cohabited with his wife, the presumption was that such relationship between him and his legal wife continued to exist. That from the fact of marriage between him and his first wife, with the additional proof that he and his first wife lived in the same vicinity; that she was recognized by him and by the community as his wife, that he contributed to her support, that he visited her, the proof of cohabitation was complete. That from such facts the jury were authorized to conclude that the defendant was cohabiting with his first wife. We see no error in such a presentation of law to the jury. It was not necessary for the court to tell the jury that there had to be direct proof that the defendant was occupying the house with the first wife—that he was sleeping there and taking his meals there, and having sexual intercourse with her. It is often in these cases, as in other criminal cases, that direct proof cannot be made, but circumstances can be shown from which the ultimate facts can be inferred.

It is insisted that the verdict is contrary to the evidence. It has repeatedly been stated by this court, and the doctrine is well settled elsewhere, that if there is a substantial conflict of the testimony, the court will not reverse the case on the ground that the verdict is contrary to the evidence. In the case at bar the evidence showed that defendant had, even down to the day of trial, two wives, one a legal wife, and the other a woman to whom he had been married as a polygamous wife. To his legal wife he had been married

over 40 years ago in England, and to his plural wife he had been married only some 12 years ago. He admits that he is living and cohabiting with his illegal wife; that he is flaunting the polygamous life in the face of the public, but denies that he is cohabiting with his lawful wife. He has never been divorced from his lawful wife. The polygamous wife and his legal wife live close together in the same village, and on the same block, on the same side of the block, and not on the corner lots, but on the lots lying between the corner lots, and they live only as far apart as across the street. The defendant had been seen in the yard of the first wife. He watered his horses at her well, and passed back and forth. He has always recognized the first wife as such, and the community in which they live have also recognized her as such. He deeded to her the property where she lives. He has found her a living. He supports her. He sends her provisions; and, whenever she has wanted a sack of flour, he would take it to her and put it in her flour-bin. He visited her in taking the flour there, and he was seen in her yard. He associated with her in taking her from her house and going to the bishop's, and from there to Armistead's. They together agreed that she "would separate from him as his wife, if he would deed her certain property and build a certain house." The condition does not seem to have been carried out, but it "stopped there" at the making of the agreement. From these and like facts we can well see that the jury were justified in concluding that he cohabited with his first wife. It does not require very strong proof to show that a man does what the law presumes he does do and ought to do. It would, as the court charged the jury, require much stronger proof to show cohabitation with the illegal wife, but there is no question raised as to cohabitation with the illegal wife, as it is fully admitted and proved. Because there was some evidence tending to show that the defendant had not lived and cohabited with his legal wife, this court would not be justified in setting aside the verdict of the jury. There was sufficient evidence upon which to base the verdict. As we cannot say there was not sufficient evidence, we

would not be justified in reversing the case on the ground of insufficiency of the evidence to authorize the verdict.

The other points raised in the case are covered by what we have said above, and do not require any further consideration. We see no error in the record. The order and judgment are affirmed.

ZANE, C. J., and HENDERSON, J., concurred.