Opinion delivered April 25, 1888.

---

## No. 5931.

### Lorenzo Tarin v. The State.

Theft—Possession of Recently Stolen Property—Fact Case.—See the opinion and the statement of the case for evidence *held* insufficient to support a conviction for horse theft, because the State, relying alone upon recent possession of the alleged stolen property, proved the explanation of his possession by the accused when it was first challenged, which was a reasonable one, but failed to prove that it was false.

Appeal from the District Court of Atascosa. Tried below before the Hon. D. P. Marr.

The conviction in this case was for the theft of ten head of horses, the property of R. J. Turner, in Atascosa county, Texas, on the twenty-fifth day of April, 1887. The penalty assessed against the appellant was a term of seven years in the penitentiary.

G. R. Tullos was the first witness for the State. He testified that on or about the last day of March, 1887, the defendant brought ten head of mares to the residence of W. C. Tullos, in Wilson county. Nine of them were branded with a peculiar device (which can not be reproduced in this report), and the other, a dun mare, was branded on the jaw with the letter P. Defendant told the witness that he raised the mares, but that the recent fencing of the country had deprived him of grass and water, and that, as the animals were about to starve on his hands, he wanted to sell them. Witness, acting for W. C. Tullos, bought the animals from the defendant, paying him therefor, seven and a half dollars per head. Witness afterwards took four of five of the mares to San Antonio and sold them for eight dollars per head. The others were ultimately claimed, proved and recovered from him by R. J. Turner. The bill of sale executed by the defendant was signed by him with his mark, and was attested by B. F. Haskell and Constable J. K. Williams. Witness did not bring the said bill of sale to court, because he was not directed to do so.

On his cross examination, the witness said that he saw defendant to know him both before and after the horse transaction. Defendant worked a short while for W. C. Tullos either soon before or soon after this transaction; witness thought it was afterwards. Witness was positive that the defendant's statement to him was that he raised the mares, and that he had the brand recorded in Atascosa county. He did not tell the witness that Bernardo Ortez brought the animals from Mexico, and gave them to his, defendant's, brother and sisters, and that he wanted to sell them because they had lost their colts and were starving themselves because the country had been fenced up and they could get no grass and water. Witness put the animals in the pasture of W. C. Tullos, near Fairview, Wilson county, as soon as he bought them.

W. C. Tullos testified for the State, that he had the defendant in his employ about the middle of March, 1887. At that time the defendant and his mother were in debt to the witness. Defendant told witness that he had some mares at his mother's house in Atascosa county, which he wanted to sell, because the country having been so fenced as to destroy the public range, they were starving for grass and water. Soon afterwards the defendant brought ten mares to witness's place at Fairview, Wilson county, and witness directed G. R. Tullos to examine

the animals and to purchase them if he and defendant could agree upon the price.  G. R. Tullos bought the mares on defendant's bill of sale, which was attested by Hackett and Constable Williams.  Defendant told the witness that the animals were sent to his mother for her children by his father, from Mexico, and that they were in his father's brand.  Defendant talked to witness frequently about the mares in 1887, and always claimed that the brand was that of his father, and that the said animals were brought from Mexico by Bernardo Ortez.  Witness, after purchasing the ten mares, had his brand put on them and then had them turned into his pasture.  Afterwards five of them were taken to San Antonio and sold.  It was on the same day but after the purchase of the mares by witness that defendant told him how he came into possession of the animals.  On cross examination, the witness said that defendant worked for him about two weeks before the transaction about the mares, and afterwards off and on throughout the year.

B. F. Hackett testified, for the State, that he was present, late in March, 1887, when G. R. Tullos, acting for W. C. Tullos, bought ten head of mares from defendant.  That transaction occurred at Fairview, Wilson county.  The consideration paid by Tullos to defendant was seven dollars and a half per head.  Witness had no recollection of attesting the bill of sale.

R. L. Turner testified, for the State, that in 1887 he was in the employ of P. Milmo, of Mexico, and had charge of the stock of horses owned by Milmo in Atascosa county.  The said horses were kept in a pasture about four and a half miles west from the town of Pleasanton, in said county.  On the twenty-fifth day of April, 1887, the witness found eight head of Milmo's mares in the pasture of H. S. Toms, in Atascosa county.  They were in the indescribable brand mentioned by the previous witnesses.  One dun mare had the letter P branded on her jaw.  One other animal had another brand, but witness could not remember it.  The said animals were in Milmo's pasture for seven months before they disappeared.  The country between the Milmo and Toms pastures was under fence.  Witness knew the animals by the indescribable brand only.  When he found them in Toms's pasture they were in the possession of and claimed by W. C. Tullos.  Witness did not know when he last saw the said ten mares before he found them in Toms's pasture.  He did not miss them at all from the four hundred and fifty head of horses he had in the Milmo pasture, but was informed that horses in the

brand mentioned were in the Toms pasture, and he claimed and recovered the five head on the strength of the brand. The said animals were brought to Atascosa county from Condella, Mexico. The witness rode the Milmo pasture himself, and knew that the fence was kept up. He occasionally found a gate open. The witness had full and absolute control of the said brand of horses, and never consented that the defendant should take any of the same.

Ignacio Satello testified, for the State, that, in April, 1887, he lived in Atascosa county, within a half mile of the house of the defendant's mother. He frequently, during said month, saw four mares hoppled out about a half mile below the house of the defendant's mother. Each of said mares was in the brand mentioned by previous witnesses, and one of them, a bald-faced animal with white feet, had a P branded on her jaw. Witness never saw the defendant about those animals, but on one occasion saw defendant's brother, Jose, riding one of them from the direction of the place where the others were hoppled to the house. The legs of each of the animals mentioned by witness had been skinned by the hopples, and all were wild and unbroken.

R. J. Turner, recalled by the State, testified that the legs of three of the mares he recovered from Tullos had been skinned by hopples. They were all wild and unbroken. The State then proved the record of the brand on the said mares in the name of P. Milmo, and rested.

Margarita Tarin, the mother of the defendant, was his first witness. She testified that she lived in Atascosa county, about three miles east from the town of Pleasanton. Bernardo Ortez, the father-in-law of the witness, lived in Mexico. The said Bernardo Ortez and one Jeff Osten came to witness's house in January, 1887. They brought with them from Mexico fourteen mares and one roan horse, which said Ortez turned over to Osten for the benefit of the children of the witness, Chistobal, Polinaria and Rita Ortez, to whom the bill of sale was executed. It was about the first of January, 1887, when Bernardo Ortez brought the said mares and horse to the witness's house and delivered them as stated. The said mares were kept on the range near witness's house, four of them hoppled, from the time they were brought there by Bernardo Ortez, until, by direction of the witness, ten of them were taken off by defendant and sold by him to Tullos. Bernardo Ortez was the father of witness's present husband, who was in Mexico. Her said husband sent

the said animals from Mexico by the said Bernardo for his children. The animals were in the brand described by previous witnesses, which brand the witness could not reproduce.

Polinaria Ortez testified, for the defense, that she was the sister of the defendant and the'granddaughter of Bernardo Ortez. In December, 1886,—as witness remembered the date,—witness's said grandfather brought fifteen mares to Wilson county and gave them to witness and her sister Rita and her brother Christobal. The said animals were taken from Wilson county to the house of witness's mother, in Atascosa county, by Jeff Osten. Witness saw the execution of the bill of sale (now in evidence) by said Bernardo Ortez, at the house of Jeff Osten, in Wilson county. Witness could neither read nor write, but recognized the bill of sale which, when executed by said Bernardo Ortez, was given to her for safe keeping. Bernardo Ortez wrote and signed the bill of sale himself, and witness thought that Jeff Osten attested it as a witness. The animals given to witness and her brother and sister by her said grandfather were all mares. There was no horse among them.

Manuel Lopez testified, for the defense, that he was present at Jeff Osten's house when Bernardo Ortez executed a bill of sale conveying fourteen or fifteen mares to the children of Margarita Tarin. A man by the name of Jesus wrote the bill of sale for Bernardo Ortez. The horses were then delivered to Jeff Osten for the benefit of the children of Margarita Tarin. Witness did not have the bill of sale in his hand but saw it written. He had not seen it until now since it was written, but recognized the bill of sale in evidence as that written by Jesus for Bernardo Ortez. Witness was not related to defendant. At the request of the State, on cross examination, the witness read the bill of sale as follows:

"County of Wilson, rancho of the Pecoso. By these presents, say I, Bernardino Ortez, that to-day, November 6, 1886, I delivered to Jose Osten 18 mares [the number blurred and the translator not positive as to its being 18] of the following brands:— [something like the caricature of a pitchfork standing upright and connected with a bar to the letter S]—with P on jaw, on the getting up side, and also on the hip, E on the same side and C on the jaw, the which I give to my children, whose names follow: Polinaria Ortez, Christobal Ortez and Rita Ortez, that said

Opinion of the court.

animals may be divided amongst them, and for which purpose I sign, this, 5th day of November, 1886.

"BERNARDO ORTEZ."

R. J. Turner, recalled by the State, testified that Margarita Tarin showed him a bill of sale conveying a horse of a stock other than that to which the mares belonged, but never showed him the bill of sale in evidence.

The motion for new trial raised the question discussed in the opinion.

No brief for the appellant has reached the Reporters.

*W. L. Davidson,* Assistant Attorney General, for the State.

WILLSON, JUDGE. Defendant, on the day he was first seen in possession of the mares, explained his possession by stating that they were sent from Mexico to defendant's mother by her husband, one Ortez, for the children of said Ortez; but they were in the brand of said Ortez, and that they were brought from Mexico by Bernardo Ortez, the father of said grantor. On the trial of the case the State proved said explanation, but failed to prove that it was false. On the other hand, the defendant proved that Bernardo Ortez brought and delivered to one Osten, for the use and benefit of defendant's mother and children, certain mares similar in description to those sold by defendant to Tullos, and executed therefor a bill of sale, which was read in evidence, and defendant's mother testified that the mares sold by the defendant were some of the same which were brought to her by said Bernardo Ortez, and that she directed the defendant to sell them to said Tullos.

There was no testimony directly rebutting or contradicting defendant's explanation, or the testimony in support thereof. There is nothing in the evidence which shows his explanation to be unreasonable or probably not true. Besides the fact that he had possession of the mares and sold them, there is no other fact of any importance in evidence even tending to establish his guilt of the theft of them. We are of the opinion that the conviction is not sustained by the evidence.

The judgment is reversed, and the cause remanded.

*Reversed and remanded.*