# THE PEOPLE OF THE TERRITORY OF UTAH,. ·RESPONDENT, *v.* JOSEPH SWASEY, APPELLANT.

NEW TRIAL.—SETTING ASIDE VERDICT.—A verdict will not be set aside if the evidence substantially supports it.  There must be an absence of evidence against the defendant or a decided preponderance in his favor.  The verdict must be plainly wrong and manifestly against the weight of the evidence.

FELONIOUS MARKING.—IDENTIFICATION OF STOLEN PROPERTY.— Where the evidence in a prosecution for marking certain sheep· not belonging to defendant fails to identify with any reasonable certainty the sheep marked as belonging to the person alleged in the indictment to be the owner, and fails to contradict or disprove defendant's proof as to his ownership of the sheep, and his having bought them of third parties in good faith, the verdict of guilty should be set aside.

LARCENY.—POSSESSION OF STOLEN PROPERTY.—The recent possession of stolen property seems not in this western country sufficient to warrant a conviction, or, at any rate, if the identification of the property was not positive, the rule of recent possession should not apply.

ID.—RECENT POSSESSION.—EXPLANATION OF POSSESSION.—If a reasonable explanation of the possession of the property claimed to· be stolen is made by defendant, and the explanation is not challenged, he is entitled to an acquittal.

APPEAL from a judgment of the district court of the first district, and from an order denying a motion for a new trial.  Part of the evidence is stated in the opinion; from the record appears other evidence tending to support the verdict, which is not noticed by the Court in its opinion.

*Mr. Samuel R. Thurman and Mr. George Sutherland* for the appellant.

*Mr. David Evans,* Assistant U. S. District Attorney, for the respondent.

BOREMAN, J.:

The defendant was indicted for knowingly marking the· sheep of another, it being alleged in the indictment that·

on or about the 1st day of February, 1887, he "did knowingly, intentionally, willfully, unlawfully and feloniously mark certain sheep, to-wit, about seventy-eight head of sheep, by then and there marking and cutting an under upper slope on each ear of said sheep, the said sheep being then and there the property of one Washburn Chipman, with the intent thereby to cheat and defraud the said Chipman out of his property in said sheep." The defendant was found guilty by the jury, and, a motion for a new trial being overruled, he was sentenced to the penitentiary. He has appealed from both the judgment and the order overruling the motion for a new trial. The indictment was based upon a peculiar statute of this Territory, passed in 1886, and which reads as follows: "Any person who shall knowingly brand or misbrand, mark or mismark, any neat cattle, horse, sheep, goat, ass or mule not his own, or who shall intentionally brand over a previous brand, or in any manner deface or obliterate a previous brand, or shall cut out or obliterate a previous mark on any neat cattle, horse, sheep, goat, ass or mule not his own, shall be deemed guilty of a felony." The appeal of the defendant is based upon two grounds—*First*, that the evidence was insufficient to warrant a verdict of guilty; and, *second*, that there was an error in the charge.

As to the first ground, the general rule is that a verdict will not be set aside for this reason if the evidence substantially supports it. There must be an absence of evidence against the defendant or a decided preponderance in his favor. *People* v. *Clauson*, 2 Utah, 502; *People* v. *Biddlecome*, 3 Utah, 208, 2 Pac. Rep. 194. *U. S.* v. *Harris*, 5 Utah, 436, 19 Pac. Rep. 197. The verdict must be plainly wrong, and if it be manifestly against the weight of the evidence, it is the duty of the Court to set it aside. The evidence in this case shows that Washburn Chipman had two herds of sheep on the range, in Emery county, in this Territory, numbering together some 4,200 or 4,300 head. The defendant lived in the same county, and was engaged in ranching, and had 50 or 60 head of horses, about 25 head of cattle, and about 268 sheep. Other men had herds of sheep on the range in the same vicinity and county. In

November, 1886, Chipman's herdsmen missed about 140 sheep from Chipman's herds. It does not appear that Chipman was there, or knew anything about it, nor was he a witness in the case. It was not an uncommon thing for the various herds of sheep in that vicinity, as elsewhere, to get mixed to some extent. A few of the Chipman sheep were found in other herds, but much the largest number (some 78 head) were claimed to have been found in the herd of the defendant, and it was for marking these 78 that he was indicted. The ownership of these sheep by Chipman was stoutly denied by the defendant, who claimed to own them, and to have bought them of various persons. They were taken from him on writs of replevin, first 6 head and then 72 head. On the indictment for marking these 78 sheep the burden was upon the prosecution to prove the title to these sheep to be in Chipman. Nobody saw them, or any of them, taken from Chipman's herds, nor taken from their immediate vicinity; nor were they seen to stray from such herds. The only possible means of showing them to be the property of Chipman was by the ear-marks, and this was the only way that it was attempted to identify them as belonging to Chipman. The mark used by Chipman was "an under slope in each ear, and an upper bit in the right ear." The mark of the defendant was somewhat similar. It was an under slope in each ear, and an upper slope in each ear, or, rather, two upper and two under slopes in each ear. The constable testified that all of the defendant's sheep, so far as he noticed, had the double-slope mark. Various witnesses testified that the defendant's herd were all marked with a mark claimed and used by the defendant, although some of the sheep were also marked in other ways. The evidence shows that defendant had not marked his sheep with any intention to obliterate other marks, but simply to place his own mark upon them. In doing this some old marks were, as a necessity, partially obliterated. The Chipman sheep all had an "upper bit in the right ear," but Molyneux's mark was an "upper bit in the right ear and an under bit in the left ear." And Molyneux testified to having sold to the defendant 110 head of sheep. And Ole Oleson,

from whom the defendant purchased 36 head, marked his sheep with an " upper bit" in the right ear, his mark being " an upper bit in each ear, a hole in the right, and a half under crop out of left." Of the six head first taken, three had holes in the ear, and one other was clearly identified as having belonged to Brough, and by him sold to the defendant. Yet these four were claimed and sworn to as the property of Chipman, when it is conclusively shown by the evidence that such could not have been the fact. The possession, therefore, of the Chipman mark was not a certain proof that the sheep belonged to Chipman. The remaining 72 head might have come from Molyneux and Oleson, and they might reasonably have been adjudged to have so come if the "upper bit in the right ear " was to be taken as a means of identification. But some of the sheep taken from the defendant, and which he is charged with having. wrongfully marked, were not identified as having the "upper bit " in the ear. The witness simply judged, as he said, that it had been there, and had been cut out, because the "old slope was there." From all the evidence it is manifest that the presence of the "upper bit in the right ear " was not a clear means of identification, nor one at all satisfactory. It might show a possible identity, but not one of reasonable certainty. The only other ear-mark by which it was sought to show that these sheep were the property of Chipman was that Chipman's sheep were all marked with an " under slope in each ear." But that was part of the defendant's mark, and it was upon all of the defendant's sheep—the whole 268 head. There was nothing to show that the defendant had no right to adopt and use the mark that he did use, nor was there anything to show that Chipman's mark was more sacred than defendant's. One was as worthy of recognition as the other. And the defendant testified that he did not know the Chipman brand or mark when the sheep were taken from him. But was the evidence in regard to the under slope of sufficient clearness whereby to identify the sheep with reasonable certainty as the property of Chipman? What was there in the "under slope" to show that they were the property of Chipman any more than of the defendant? The sheep

of both had the "under slope." Some of the evidence for
the prosecution was to the effect that the upper slope on
the ears of the 78 head· was fresh, and the "under slope"
was old, but other evidence for the prosecution showed
that there was no apparent difference as to age between the
upper and the under slope; and some of the evidence was
to the effect that the under slope had, as the witness
thought, been scraped, and on some of the sheep only a
part of the old slope remained. The constable who seized
the sheep thought there was a remnant of the old "upper
bit" and a remnant of the old "under slope" perceptible
on each of the sheep taken, and that was, as he thought,
enough to identify them as Chipman's property; and hence
he took them on the civil process as belonging to Chip-
man. As to the "upper bit," we have already seen that
that could not safely be relied upon as a means of identify-
ing the property as belonging to Chipman. The only
means, therefore, left for identifying the sheep as Chip-
man's was the "under slope," or a remnant of it, and that
could only be considered as conclusive by a rejection of
the testimony of witnesses, both of the prosecution and
the defense, who testified as to the mark used and claimed
by the defendant, and with which all of his sheep were
marked. That would seem to be a frail thread to over-
come the rule that the defendant is presumed to be inno-
cent until proved guilty. The proof of identity was not
direct and positive, but the rule is that the proof must be
made by testimony that it is the most direct and positive
of which the case is susceptible. *Com* v. *Kinison,* 4
Mass., 646; *Garcia* v. *State,* 26 Tex., 209; *People* v. *Eck-
ert,* 19 Cal., 604.

If it be assumed, however, that the sheep were the
property of Chipman, there was no evidence that the
defendant came by them wrongfully, except that they
were found in his possession. If the property had been
found in the defendant's possession immediately after the
loss, such possession might have been a circumstance to be
taken into consideration by the jury, with other circum-
stances, in arriving at a conclusion as to the guilt or inno-
cence of the defendant. But of itself it was not sufficient.

7

It seems now to be an established doctrine, especially in this western country, that in larceny the recent possession of stolen property is not of itself sufficient to warrant a conviction. *People* v. *Ah Ki,* 20 Cal. 178; *People* v. *Gassaway,* 23 Cal. 51; *Sahlinger* v. *People,* 102 Ill. 241; *State* v. *Raymond,* 46 Conn. 345; *People* v. *Noregea,* 48 Cal. 123; *People* v. *Fagin,* 6 Pac. Rep. 394; *State* v. *Hodge,* 50 N. H. 510; 3 Greenleaf Ev. (14th Ed.) § 31; *State* v. *Hale,* 7 Pac. Rep. 523; *Ingalls* v. *State,* 48 Wis. 647, 4 N. W. Rep. 785. And the rule of presumption is sometimes fallacious and dangerous as a criterion of guilt. Wills, Circ. Ev. p. 71, side p. 54. The offense with which the defendant is charged is in the nature of larceny, and should in this respect be governed by the same principles. But it may be said that the marking itself was, in addition to the possession, a suspicious circumstance. Yet the suspicious character of this fact is entirely removed when we see that the evidence shows that there was apparently and in fact no effort or intention to obliterate any old marks that were upon the sheep, but the whole effort was simply to put the defendant's mark upon the sheep, without regard to whether it interfered with any existing marks or not. The evidence shows that this was the custom of the country with regard to small bunches of sheep. The people did not seem to rely upon the ear-marks on sheep as certain means of showing title. There was no evidence that any of these marks were recorded. Each person used such mark as he chose. And there is nothing to show that the defendant knew the Chipman mark. In fact, he testifies, as already stated, that he did not know it when he purchased the sheep. It is a common practice all through this mountain country to have herdsmen constantly with sheep, and we can readily see why less regard seems to be paid to marks on sheep than on other animals. Brands and marks upon horses and cattle which are not herded, but allowed to run upon the range unaccompanied by herdsmen, are treated as very strong evidences of title or ownership. But it seems different as to sheep. If there was no positive identification of the property, the rule as to recent posses-

sion ought not to apply. Wills, Circ. Ev. p. 73, side p. 556. But in this case the element of recent possession, with or without accompanying circumstances, did not exist, and no guilty knowledge could be inferred from the possession. The Chipman herdsmen testify to having missed the sheep in November, 1886, and they were not found in the defendant's possession until the February following, a space of three months. Evidently that was not possession of this kind of property recently after the property was lost or stolen. The evidence of the defendant's possession was proper to go to the jury for their consideration in connection with the other circumstances. But the rule as to presumption of guilt does not apply if the prisoner "can account for such possession in some way consistently with his innocence." Id. § 4, p. 64, side p. 47, and cases. The possession of the property by the defendant, whether recent or not, was explained by the defendant in an apparently reasonable manner. He said that he had bought the sheep, and gave the names of the parties from whom he had bought them, and these men were on hand to support his testimony in this regard, one of them being a witness for the prosecution. He gave the explanation when the claim was first made for the sheep, and insisted upon it all the way through the case. His purchases were proven by the parties from whom he had made them. They could not identify the sheep, except the four to which reference has been made, but it was proved by them that he bought of them 256 head; that they sold the sheep to him. The remaining few head were by his testimony shown to have been bought of various persons, one or two here and two or three there. All of the sheep in his possession were thus accounted for, and this almost wholly by the testimony of the men from whom he had purchased. No effort whatever was made to show that the defendant's explanation was false, nor even to cast any doubt upon it. It was not shown that he had owned other sheep, or that he had bought sheep from anybody else, or that he had not bought from the witnesses as they had testified, or that he had 78 or any other number of sheep

more than he could account for. Manifestly his explanation, standing unchallenged, rebuts the idea that he came by the sheep dishonestly, and all the circumstances show that he was the honest possessor of the sheep, and had no criminal intent in placing his mark upon them. Without a criminal intent the crime was not committed. When he made a reasonable explanation, there should have been evidence given to the jury to show its falsity, or he was entitled to an acquittal. Id., pp. 64, 65, side p. 48; *Jones* v. *State*, 30 Miss., 653; *Johnson* v. *State*, 12 Tex. App., 385; *Miller* v. *State*, 18 Tex. App., 38; *Gilliland* v. *State*, 7 S. W. Rep., 241; *Tarin* v. *State*, 8 S. W. Rep., 473; *People* v. *Fagan*, 66 Cal., 536; 3 Pac. Rep., 884; *State* v. *Clifford*, 14 Nev., 72. The rule that where a party finds lost property which shows the owner, then the party is bound to know the owner, is not applicable. The evidence shows that the defendant did not find the property, but bought it. Take the whole case together, the evidence was not sufficient to warrant a verdict of guilty. As the case will have to be remanded on the ground stated, it will not be necessary for the Court to consider the other points raised. The judgment and order of the court below are reversed, and the cause is remanded for a new trial.

SANDFORD, C. J., and HENDERSON, J., concurred.