AUGUST KIRSCHNER, Plaintiff, *vs.* THE STATE.

ERROR TO CIRCUIT COURT, BADAX COUNTY.

Heard July 11.]                         [Decided July 20, 1859.

*Witness — Cross-Examination—Infamy—Record—Criminal Law.*

If a witness on cross-examination is asked questions tending to show the present or recent places of residence, occupation, association and acquaintances of the witness, of his own choice, such questions cannot be considered irrelevant, and it is error in the court to instruct such witness that he need not answer them unless he choose, if his answer would tend to expose him to a criminal charge. So too, a witness may be asked his real name, or whether he had at different times assumed different names; as the answer could only extend to the credibility of the witness. This rule is true even where the witness testifies as an acomplice. But he cannot be asked if he has been guilty of a crime, or has been convicted of a criminal offence, as the answers to them would tend to degrade him.

Although the witness is the judge of the effect of his answer, and is not bound to disclose any fact or circumstance to show how his answers affect him as to a criminal charge or prosecution, yet the court is to determine under all the circumstances of the case, whether such is the tendency of the question asked, and whether he shall be required to answer.

A record that has the seal of the court annexed to the certificate of the judge instead of being annexed to the record with the certificate of the clerk, is not properly authenticated, so as to be read in evidence. So too, the record of conviction in a foreign court must contain a copy of the indictment, to show whether the offence charged is infamous.

This was an indictment against the plaintiff in error, found by the grand jury of the county of La Crosse, at the March term, 1858, for larceny in stealing a large quantity of jewelry, watches and money, in July, 1857. In the first count one Albert Mallow was also charged with the plaintiff in error as principal, and in the second count Mallow and his wife are charged with the plaintiff as feloneous receivers of the same goods; and in the third count they are all charged with a feloneous concealment of the same goods. On the application of the defendant the venue was changed to the county

of Badax, where the cause was tried at the June term, 1858, by a jury, the state having entered a *nolle prosequi* as to the second and third counts of the indictment. Upon the trial Albert Mallow was found guilty, and the jury disagreed as to his wife and this plaintiff in error. And a *nolle prosequi* was entered as to the wife.

The second trial of this plaintiff was again brought on at the December term, 1858, and the defendant found guilty upon the first count of the indictment. At the trial the plaintiff took sundry exceptions to the ruling of the court below which were duly settled by bill of exceptions, and upon that and the record, the case is brought into this court by writ of error.

On the trial the prosecution called as a witness Charles Reisner, to the swearing of whom the plaintiff in error objected, for the reason that the witness had been rendered incompetent by reason of having been convicted and sentenced to the penitentiary of the State of Illinois for two years, for the crime of larceny, committed in the city of Chicago, in 1855, under and by the name of Charles Hirsch; and then offered to introduce the record of that conviction. The plaintiff in error also offered to accompany this proof with evidence that the witness had stated that his real name was Hirsch, and he was the same person named in the record; and also relied upon the statutes of Illinois showing that the recorder's court of Chicago was a court of record, of competent jurisdiction to try the crime of larceny. The record was defective in the certificate which is noticed in the opinion of the court, and will not be further noticed here, except to say that the record was rejected by the court below, and the witness was sworn.

The witness testified that he boarded with and worked for Mallow, at the time the robbery took place; that about noon, after the day of the robbery, he went with Mallow and one William John in a wagon from La Crosse to the "Mormon Cooley," where John got out and took a bag from the wagon and went into the bushes, and left it; that they went to the "Cooley" again after three days, and divided the jewelry into four shares of which witness took one, Mallow two and John one,. Two days afterwards the three others and this plaintiff went to the "Cooley," and one of the shares of Mallow was given to Kirschner.

Kirschner's counsel on the cross-examination asked the

following questions: 1st. Were you acquainted in the spring of 1855, in the city of Chicago, with a man by the name of Leopold Mentz? 2nd. Have you formerly resided in Chicago? 3d. What time did you leave the city of Chicago for La Crosse? 4th. What is your real name? Is your name Reisner or Hirsch? 5th. Were you acquainted with Judge Miller, in the spring of 1855, in Chicago? 6th. Did you, or did you not learn the harness trade in Alton, Illinois, previous to your coming to La Crosse. 7th. Did you not at the term of this court, last June, at this place, when the defendant was being tried, swear that you stole these goods; and, subsequently, when charged with it in an indictment in La Crosse county, plead "not guilty?" 8th. Did you not swear in the case of the State against Albert Mallow, Louisa Mallow, and this defendant, tried at this place last June, that you had been in the Alton penitentiary, Illinois, two years? And, 9th. Have you not been convicted of larceny and sentenced to the penitentiary in Illinois?

All these questions were objected to by the prosecution, and the circuit judge instructed the witness that he *need not* answer without he chose, if the answers would tend to convict him of crime; and the witness then refused to answer said questions and every one of them. To which this plaintiff excepted.

The other facts contained in the bill of exceptions are immaterial to the understanding of the opinion of the court.

*Denison, Lyndes & Tucker*, for the plaintiff in error.

*G. Bouck, Att'y Gen.*, for the prosecution.

*By the Court*, Dixon, C. J. We are of opinion that the circuit court erred in not permitting the first four questions put to the witness Reisner, on his cross-examination to be answered by him. It appears from the record that the counsel for the state objected to these questions, and that the court instructed the witness that " he need not answer them, unless he chose to, if his answers would tend to expose him to a criminal charge." Under this instruction of the court the witness refused to answer, and the defendant excepted. We think the court must have misapprehended the nature and

tendency of these questions, or that some mistake, as to the reasons assigned for excluding the testimony, must have intervened in settling the bill of exceptions.

It is manifest that neither of these questions tended either directly or indirectly to draw from the witness answers which in any manner could criminate him. The correct practice in such cases, is for the witness to say on his oath he believes the answer would tend to criminate him; and if he says that he does, his answer is generally taken as conclusive. In this case it does not appear that the witness was asked at all whether the questions had such tendency, and we are only led to infer that in his opinion they did have such tendency, from his refusal to answer, after receiving instructions from the court. Although the witness is the judge of the effect of his answer, and is not bound to disclose any facts or circumstances to show how the answer would affect him, as that would defeat the rule and destroy the protection afforded by the law, yet the court is to determine under all the circumstances of the case, whether such is the tendency of the question put to him, and whether he shall be required to answer; as otherwise it would be in the power of every witness to deprive parties of the benefit of his testimony, by a merely colorable pretence that his answers to questions would have a tendency to implicate him in some crime or misdemeanor, or would expose him to a penalty or forfeiture, when it is clear, as we think it was in this case, that the questions have no such tendency.

At first sight these questions might seem open to the objection of being collatteral and irrelevant, and for that reason not permissible, even under the latitude given on cross-examination. Yet, for the purpose of showing the character of the witness and the degree of credit to be given to his testimony, we think they were proper. These were matters of the highest importance to the jury, who from the testimony were to

determine the guilt or innocence of the defendant. For these purposes, questions tending to show the present or recent places of residence, occupation, association and acquaintances of the witness, of his own choice, are proper and cannot be considered as irrelevant. If in answer to the fourth question the witness had replied that he was not then known by his real name, or that he had at different times and places assumed different names, it would, unexplained, have cast a strong shadow of doubt and suspicion upon his character and credibility.

It is urged that these questions were immaterial, and that no injury was done to the defendant in excluding them, because the witness appeared and testified in the character of an accomplice; that he stood before the jury impeached and discredited. To this it may be replied that accomplices may, and no doubt often do testify in such a manner as to give great weight to their testimony and to render it very difficult for the accused to discredit them either by their statements or the circumstances of the case itself, when if he were permitted in addition, to resort to the usual modes of impeachment, it would clearly appear that they were designing and artful witnesses, and wholly unworthy of belief. In this case, however, it appears that the witness denied that he was an accomplice, and attempted to bolster and sustain his character by stating that he took no part in the theft, but was afterwards compelled by the threats of the persons who committed the offence to receive a portion of the stolen goods.

The fifth and seventh questions were wholly immaterial. The sixth, eighth and ninth were properly overruled, since it is evident from the whole case that answers to them would have directly tended to degrade the character of the witness by showing that he had been guilty of an infamous crime. It is also very evident that these questions were put with a view to drawing from the witness the fact of his previous

conviction and punishment for the crime of larceny, which the defendant by offering the record had attempted, but failed to establish. This was not allowable for the further reason that there was higher and better evidence.

The record of the conviction of the witness of the crime of larceny, before the recorder's court of the city of Chicago, we think was properly excluded, for the reason that the seal of the court was annexed to the certificate of the judge, instead of being annexed to the record with the certificate of the clerk, *Turner vs. Wuddington*, 3 Wash. C. C. R., 126.

Inasmuch as each state has a criminal code peculiar to itself, so that what may be regarded as an infamous crime in one state may not be in another; we are furthermore of opinion that the record offered in this case was defective in not containing a copy of the indictment upon which the conviction is alleged to have taken place. Without the indictment  it is impossible for the oreign tribunal to know the nature for degree of the offence, or whether it was an offence denominated infamous or not in the state where it is to be used.

The judgment of the court below is reversed and a *venire de novo* awarded.