### INGALLS vs. THE STATE.

*February 24 — March 9, 1880.*

CRIMINAL LAW AND PRACTICE. *(1) For what purpose intoxication of the accused may be shown. (2) Instructions as to testimony of accomplice. (3) Instruction as to* falsus in uno, *etc. ·(4) Whether defendant can be required to testify to a former conviction. (5) Possession of stolen goods; its effect as evidence. (6) Increased penalty for second offense valid.*

48 647
83 494
48 647
88 183

1. In a criminal action, it is competent for the accused to show that at or about the time when the crime was committed, he was in such a physical condition as to render it improbable that he committed it; and the fact that such condition was caused by intoxication makes no difference in the rule, the intoxication not being set up *as a defense.*

2. In a criminal action, it is in general within the discretion of the court below whether to instruct the jury not to find defendant guilty upon the unsupported testimony of an accomplice; and where that court refuses a new trial after a verdict founded upon such testimony alone, this court will not reverse the judgment upon that ground.

3. A refusal to instruct the jury, in a criminal action, that "if a witness knowingly and deliberately swear falsely in regard to one material fact, the jury are not bound to believe any of his statements unless corroborated by other proof," is *held* no error, where there was no evidence showing that any witness in the case had thus sworn.

4. *It seems* that, independently of sec. 4073, R. S., the defendant in a criminal action could not be *required*, as a witness, to testify whether he had ever been convicted of an infamous crime not charged in the information for the purpose of subjecting him to punishment as for a second offense; that the right of the witness in any case to decline answering such a question on the ground that the answer would tend to degrade him, was personal *to* such witness, and could not be taken by the party calling him; but that the objection that such testimony is not the best evidence of the fact might be taken, specifically, by such party. No opinion is here expressed *as to the construction of* said sec. 4073.

5. Mere possession of stolen goods, by the accused, shortly after the larceny, does not raise any legal presumption of his guilt, but is merely a circumstance to be considered by the jury in connection with the other facts in the case.

6. Statutes imposing a greater penalty for a second or third offense of the same character than that imposed for the first offense, do not violate the constitutional provision which forbids putting one twice in jeopardy for the same offense.

ERROR to the Circuit Court for *Polk* County.

The case is thus stated by Mr. Justice TAYLOR:

" The plaintiff in error was tried in the circuit court of Rock county upon an information charging him with the larceny of goods from a shop, of the value of more than $100. The information also charged the larceny as a second offense, alleging the fact that he had been theretofore duly convicted and punished for a previous larceny committed by him. The plaintiff in error was convicted of the larceny charged in the information. The evidence showed, and the jury found, that he had been convicted of the former larceny charged in the information, and he was sentenced to the state prison for the term of five years. Exceptions were taken by the defendant on the trial to the rulings of the court in excluding evidence offered on his part; to parts of the instructions given by the learned circuit judge to the jury; and to his refusal to give several instructions requested by the defendant. After judgment, a bill of exceptions was duly settled and signed, and the record is brought to this court by a writ of error.

" The first error assigned by the learned counsel for the plaintiff in error in this court is, that the circuit judge improperly excluded evidence offered on his part tending to show that, at the time the alleged larceny was committed, he was so much intoxicated that it was improbable, if not impossible, that he could have committed the larceny charged.

" The evidence on the part of the state showed that a hole had been cut in the upper part of the pane of glass in the lower sash, large enough to permit the insertion of a man's hand and arm; and that a nail which fastened the lower sash had been removed, the window then opened and the goods removed, without any disturbance or confusion of the goods in the shop which were not taken. The plaintiff in error had sworn that he had been drinking very often, on the night the larceny was committed, of both whisky and beer; and that he had left Janesville before the larceny was committed, and knew

nothing about it. He then called as a witness one Albert Jones, who had seen the plaintiff in error in the evening before the larceny had been committed The witness was asked the following question: 'Where and in what condition was he?' The question was objected to by the district attorney as incompetent, and thereupon the following colloquy took place between the learned circuit judge and the counsel for the defendant:

"*Judge.* 'The testimony of the defendant here indicates not only the possession of his faculties, but a distinct remembrance of what took place at the time; and I don't see the propriety of taking up the time to show his condition. The only question is, whether he was so under the influence of liquor that he did not know what he was doing. He has stated himself that he was at various places, and what he was doing.' *Counsel.* 'We desire to show that he was in such a condition that he could not have done this job as neatly as it was done.' *Judge.* 'I don't understand you are entitled to show that. The evidence is only admissible for the purpose of showing that the person was so under the influence of liquor that he did not comprehend what he was doing.' *Counsel.* 'We offer the evidence for the purpose of showing that the defendant was physically and mentally incapable of committing the burglary as it is shown to have been done.' *Court.* 'If that is the purpose, I will exclude it. It is only admissible for the purpose I have indicated, and not for any other.'

"The defendant duly excepted to the ruling of the judge excluding the evidence. Afterwards, in his instructions to the jury, the learned circuit judge reiterated the same idea as to the purposes for which the intoxication of the accused could be considered by the jury, and said: 'One cannot shield himself under the plea of intoxication to justify the commission of any act; and the only way that intoxication becomes admissible in evidence at all, is to show that, when the act

complained of was committed, the party was so intoxicated as to be beside himself, was not in his right mind; and if that mental condition was produced by temporary intoxication, why intoxication may be shown. But when the testimony shows that the person was not so far gone, his mental faculties were not so impaired by intoxication as to deprive him of reason and put him in a condition where he didn't know what he was doing, it don't go·as a defense at all. It is only when it tends to show that the person. who committed the act by reason of intoxication was not in his right mind, that it is a defense.' This instruction was also excepted to by the defendant."

The cause was submitted on the brief of *Lavinia Goodell* for the plaintiff in error, and that of the *Attorney General* for the defendant in error.

TAYLOR, J. We are strongly impressed with the idea that the learned judge did not fully understand the object of the offer to show the condition of the defendant as to drunkenness, at·or about the time the larceny was committed. As we understand the offer, it was not to show that the accused was in such a mental condition as would excuse the commission of an act which would constitute the crime of larceny if committed by a sober man. It was not offered as an excuse or defense for a larceny committed, but for the purpose of showing that it was highly improbable that the accused did in fact commit the acts complained of, viz., the entering of the shop, and removing the goods therefrom; not as a defense for want of mental capacity, but as evidence tending to show that the acts which constituted the offense were not done by the accused. This object of the evidence seems to us to have been sufficiently indicated by the learned counsel for the defendant; and for the purpose so indicated we are of the opinion the evidence was clearly competent.

The authorities cited in the brief of the learned counsel for

the plaintiff in error indicate in what cases it is competent to show the intoxication of the accused upon the question of the particular intent with which an unlawful or wrongful act was done, when such intent is necessary to constitute the offense charged. None of the cases cited, however, have a direct bearing upon the point made in this case. It would seem, however, that there can be no doubt as to the right of a person accused of crime to show that at the time of its commission he was physically incapable of committing it. There can be no doubt of the right of the accused to show that he was at the time prostrated by a disease which rendered it highly improbable that he could have endured the exertion and labor necessary to commit the crime. And so we think if, in this case, the evidence had shown that, within a few hours of the time this larceny must have been committed, the accused had been temporarily prostrated by drunkenness, so as to render it highly improbable that he could have been present at the place where the crime was committed, or, if able to be present, that he could have done what the evidence shows was done by those who committed the larceny, he is equally entitled to show that fact. In such case the intoxication is not shown for the purpose of excuse or mitigation of the offense charged, but as evidence tending to show that he was not present and did not commit the acts constituting the offense. Evidence of this kind would have but little weight against direct evidence showing the actual presence of the accused at the time and place when and where the crime was committed; but, certainly, in the absence of any such direct evidence, the accused may give in evidence any fact which would have a natural tendency to render it improbable that he was there and did the acts complained of; and the fact that drunkenness was the thing which tended to prove such improbability, can make no difference. If a man by voluntary drunkenness renders himself incapable of walking for a limited time, it is just as competent evidence tending to show that

he did not walk during the time he was so incapable, as though he had been so rendered incapable by paralysis of his limbs from some cause over which he had no control. The cause of the incapacity in such case is immaterial; the material question is, Was he in fact incapable of doing the acts charged? We cannot speculate upon the effect which the evidence, if admitted, would have had upon the verdict of the jury in this case. It was offered, apparently in good faith, as evidence tending to show that the accused could not have committed the offense. Had the drunkenness been proved so complete as to have destroyed his powers of locomotion, or so as to have destroyed the steady use of his limbs, it would have had a tendency to disprove the charge made against him. The evidence being material, it should have been admitted, and its rejection was an error for which this court is compelled to reverse the judgment.

The learned counsel for the plaintiff in error insist that the court erred in refusing to charge the jury, as requested, as to the effect which should be given to the evidence of an accomplice. The substance of the requests asked was, that the circuit judge should instruct the jury not to convict the accused upon the evidence of an accomplice, unsupported by any other evidence in the case. In regard to this point we think the evidence in the first place does not conclusively show that the witness Bender, who is the supposed accomplice, was such; and if it does show him to be such, then his evidence is, in fact, supported and corroborated by other evidence in the case. But we are of the opinion that there is no rule of law which requires the trial judge to instruct the jury to acquit the prisoner, in case his guilt is established only by the unsupported testimony of an accomplice. In England it is stated that, as a rule of practice, the trial judges do usually so charge the jury, but that on refusal to so charge, followed by a conviction and judgment, the judgment will not be reversed for that cause, on appeal. *Regina v. Stubbs,* 33 Eng.

Law and Eq., 552. If the jury convict upon the testimony of an accomplice alone, and the trial judge is satisfied with the verdict and refuses a new trial, the appellate court will not, as a general rule, reverse for that cause. *Brown v. Commonwealth*, 11 Leigh, 711; 1 Whart. Crim. Law, § 785, and cases cited; 1 Bishop's Crim. Proced., § 1081.

We think the general rule, as established in this country and in England, is that it is a matter to a great extent in the discretion of the trial judge whether or not he will instruct the jury to acquit the prisoner when there is no evidence of his guilt except the testimony of an accomplice, uncorroborated as to any material fact; and that it is not error for the trial judge to refuse so to instruct. See cases above cited.

The learned counsel for the plaintiff in error alleges that the court erred in refusing to give the following charge to the jury, as requested: "That if a witness knowingly and deliberately swear falsely in regard to one material fact, the jury are not bound to believe any of his statements unless corroborated by other proof." This instruction may be good as an abstract question of law; but we do not find from the record that it has any application to the testimony of any of the witnesses sworn on the trial of this case. It is said in the argument that the witness Kinney clearly testified falsely as to what he told the witness Miss King; but upon examination of the testimony of these witnesses it is apparent that the witness Kinney did not admit that he told Miss King what she swears he did. The question asked Kinney on his cross examination was: "Didn't you state to Miss Angie King, in this city, on the afternoon of the 30th of April last, that you did not *notice anything about* what kind of clothes *Ingalls* had on at Turner Junction?" To this question the witness answered that he did not. When Miss King was called as a witness, she answered to the direct question: "Did he say to you, on the 30th day of April last, that he saw *Thomas Ingalls* at Turner Junction, but that he didn't *notice anything*

*about* what kind of clothes he had on?" " He did." But, from her cross examination, it is quite evident that she was not an over-exact witness, and that what she remembered of her conversation with him was more of a general nature than of the exact words he used. Kinney himself, when recalled, does not admit that he made the statement sworn to by Miss King, but says: " She first asked me whether I was going to appear against *Ingalls*, and asked whether I took *any particular notice* of his clothes. I said I did not take *particular notice* of them, and passed on."

The witness swore, on his direct examination, that he did not tell Miss King he did not notice anything about what kind of clothes *Ingalls* had on. She says to the direct question he did; and he admits on his reëxamination, that he stated to her, in reply to her question whether he took any *particular notice of his clothes*, that he " did *not take particular notice of them,* and passed on." There is no admission on his part that he swore falsely on his first examination. He was asked a particular question, and he denies that he made the statement in the exact form of the question, and afterwards admits that he made a statement to Miss King different in both form and substance. We do not think there was any evidence showing that the witness Kinney had sworn willfully false in any part of his testimony; and there was, therefore, no occasion for giving the instruction asked.

It is also charged that the circuit judge erred in requiring the defendant, when upon the stand as a witness, to testify that he had been convicted of a larceny not charged in the information. A question similar to this came before this court in the case of *Kirschner v. The State,* 9 Wis., 140. In that case the following question was asked the witness: " Have you not been convicted of larceny and sentenced to the penitentiary in Illinois?" And the court instructed the witness that he need not answer the same. Chief Justice Dixon, in delivering the opinion in that case, says, in regard to this

question, "that it was properly overruled for two reasons: *first*, because the answer tended to degrade the witness by showing that he had been guilty of an infamous crime; and *second*, for the reason that the best evidence of his conviction was the record of his trial and conviction." According to the rule of that case, it would seem that the evidence that the defendant had been theretofore convicted of an infamous crime ought not to have been received, unless such conviction was charged in the information for the purpose of convicting and punishing the accused for a second offense. The conviction as to which the defendant was required to answer was not the one charged in the information, and should not have been received in evidence against the objection of the defendant. The witness may undoubtedly waive his privilege and answer if he sees fit, but ought not to be compelled to do so against his objection. The objection to the introduction of testimony charging the witness with an infamous crime is one which must be taken by the witness himself, and not by the party for whom he is called. It is a personal privilege, and not a right of the party calling him. It is probable that the objection to the evidence in the case of the witness Snell, who was interrogated as to his conviction of an infamous crime, was overruled by the learned circuit judge on the ground, that the objection was not made by the witness but by the party calling him. But, in the case of the witness Snell, if the party calling him had objected to the evidence on the ground that the record was the best evidence of his conviction, the objection should have been sustained, under the decision in *Kirschner v. The State, supra.*

It is also urged by the learned counsel for the plaintiff in error, that the circuit judge, in his instructions to the jury, gave too much importance to the evidence of the possession of stolen goods, or some part of them, by the accused shortly after the larceny. The effect of such evidence was very ably discussed by the late Chief Justice Dixon, in the case of

*Graves v. The State*, 12 Wis., 591, and more recently by Justice ORTON, in the case of *The State v. Snell*, 46 Wis., 524. The rule to be derived from these cases, and which is sustained by the later elementary writers upon evidence in criminal cases, is, that the possession of the stolen goods by the accused recently after the larceny does not raise any legal presumption of the guilt of the party so found in possession. The fact of the possession of the stolen property by the accused is evidence tending to prove his guilt, but is in no sense conclusive as to his guilt; nor does his guilt follow as a presumption of law unless such possession be explained by the accused.

The courts of California have held that it was error to charge the jury that they should convict the accused upon the mere proof of the possession of the stolen property recently after the larceny. See *People v. Ah Ki*, 20 Cal., 177; *People v. Chambers*, 18 Cal., 382; *People v. Levison*, 16 Cal., 98. And these decisions seem to be supported by both Wharton and Greenleaf. See 2 Wharton on Criminal Law, § 728, and 3 Greenleaf's Evidence, § 31. The true rule, we think, is well stated by Greenleaf in the section above cited. Speaking of the presumption arising from the possession of the stolen goods, he says: "The presumption being not conclusive but disputable, and therefore to be dealt with by the jury alone, as a mere inference of fact, its force and value will depend on several considerations. In the first place, if the fact of possession stands alone, wholly unconnected with any other circumstances, its value or persuasive power is very slight; for the real criminal may have artfully placed the article in the possession or upon the premises of an innocent person, the better to conceal his own guilt, whether it be the instrument of homicide, burglary or other crime, or the fruits of robbery or larceny; or it may have been thrown away by the felon in his flight and found by the possessor, or have been taken away from him in order to restore it to the true owner, or otherwise have come lawfully into his possession. It will be necessary, therefore,

for the prosecutor to add the proof of other circumstances indicative of guilt, in order to render the naked possession of the thing available towards a conviction." The learned writer then goes on to indicate what circumstances should be proved, to make the possession available to produce a conviction.

It is evident that mere possession of stolen goods by a party accused ought not to be in every case, if in any, sufficient evidence to justify a conviction. Take the case of a reputable citizen, whose character is such that no suspicion of crime has attached to him, charged with stealing a horse, and the only proof is that the horse was found, the next morning after he was stolen, in his stable, the stable being one which could be entered without the aid of the accused. Clearly in such a case the presumption of innocence would outweigh the inference of guilt arising out of the fact of possession. So, if a purse of money had been stolen in a crowd, and soon after the theft the same had been found in the pocket of a man of known reputable character, the pocket being such that the purse could have been put there without his knowledge, the circumstance would hardly raise a suspicion sufficient to lean a charge of theft upon. It is not so much the mere possession of the stolen goods, as it is the nature of the possession; whether it is an open and unconcealed one, or whether the goods are such as the person found in possession thereof would probably be possessed of in a lawful way. If property of great value should be found in the possession of one known to be poor, so as to render it highly improbable that he had purchased it, an inference of guilt would arise much stronger than if such property were found in the possession of a man of wealth, who would probably purchase goods of such value. It would be impossible to enumerate the variety of circumstances attending the mere possession of stolen goods, which would lessen or increase the inference of guilty possession. In directing a jury, therefore, as to the weight they should give to the possession of stolen goods or

the instruments of crime as evidence of guilt, care should be taken not to place too much importance upon the mere possession, but their attention should be called to the character of the possession and the circumstances attending it. Without holding that the learned circuit judge erred in his instructions to the jury upon this point, under the whole evidence in the case, we are inclined to think too much stress was laid upon the fact of the possession, and perhaps not enough upon the circumstances under which the accused was found in the possession.

We are unable to see how the statute which imposes a greater punishment upon a person who commits a second or third offense of the same character than it imposes upon the person who is convicted of a first offense, violates the provision of our constitution which prohibits putting a person twice in jeopardy for the same offense. The increased severity of the punishment for the subsequent offense is not a punishment of the person for the first offense a second time, but a severer punishment for the second offense, because the commission of the second offense is evidence of the incorrigible and dangerous character of the accused, which calls for and demands a severer punishment than should be inflicted upon the person guilty of a first crime.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial. The warden of the state prison will surrender the plaintiff in error to the sheriff of Rock county, who will hold him in custody until he shall be discharged, or his custody changed by due course of law.

On the 20th of April, 1880, the following additional opinion was filed:

TAYLOR, J. When this case was argued, the attention of this court was not called to the provisions of sec. 4073, R. S. 1878, and that section was entirely overlooked in the consider-

ation of the case.   What was said, therefore, in the opinion as. to the propriety of compelling the accused, when testifying as a witness in his own behalf, to answer upon his cross examination questions in regard to his having been previously convicted of an infamous crime, was not intended as expressing any opinion upon the construction of that section.