BELCHER, Plaintiff in error, v. STATE, Defendant in error.

*Nos. State 42, 111. Argued March 7, 1969.—Decided April 1, 1969.*
(Also reported in 166 N. W. 2d 211.)

300

For the plaintiff in error there was a brief and oral argument by *Stanley F. Hack* of Milwaukee.

For the defendant in error the cause was argued by *Harold B. Jackson, Jr.,* assistant district attorney of Milwaukee county, with whom on the brief were *Robert W. Warren,* attorney general, and *E. Michael McCann,* district attorney.

WILKIE, J.  The first issue presented on this review is the significance of (1) defendant's efforts to gain the assistance of the court on his own initial motions in the trial court, and (2) his pleas of not guilty and guilty, all made or entered in the trial court without making and preserving objections to the court's personal jurisdiction over him.

Defendant contends that when the United States attorney for the Eastern district was requested to issue a fugitive warrant there were not on file in the Milwaukee courts the requisite complaints and accompanying warrants charging this defendant with these two crimes. He further contends that he objected to the jurisdiction of the Milwaukee circuit court when he was returned from California.

Notwithstanding these contentions, the fact is that the defendant submitted to the jurisdiction of the court by (1) making various motions to the trial court prior

to pleading, and (2) twice pleading to the charges contained in the informations, all without making and preserving an objection to the trial court's jurisdiction over his person.

Jurisdiction over the person can be conferred by consent of the defendant, or a defense based on the lack of personal jurisdiction can be *waived* by pleading to the information without making proper objection. In *State ex rel. La Follette v. Raskin,*[2] this court stated that, ". . . [a]lthough jurisdiction of subject matter is derived from law and cannot be waived nor conferred by consent, this is not true of jurisdiction over the person." [3]

In *Raskin,* this court was dealing with the timeliness of an objection to the sufficiency of a warrant being challenged on the grounds of *State ex rel. White v. Simpson.*[4] It was held that the motion to dismiss on *White* grounds was not timely when it was "made for the first time only after the defendant had been arraigned, entered a plea, and had a jury trial which resulted in a mistrial." [5]

Relying upon *Kushman v. State ex rel. Panzer,*[6] and *State ex rel. Wojtycski v. Hanley,*[7] this court stated that "a defendant who has appeared in court with counsel without contesting the validity of the arrest, has submitted to the jurisdiction of the court and has waived his right to attack the arrest warrant." [8]

In *Kushman* the court stated:

". . . Defendant entered a plea of not guilty, demanded a jury trial, and the trial proceeded without any challenge as to the sufficiency of the complaint. If it was insufficient for any reason it should have been challenged

---

[2] (1966), 30 Wis. 2d 39, 139 N. W. 2d 667.

[3] *Id.* at page 45.

[4] (1965), 28 Wis. 2d 590, 137 N. W. 2d 391.

[5] *Supra,* footnote 2, at page 43.

[6] (1942), 240 Wis. 134, 2 N. W. 2d 862.

[7] (1945), 248 Wis. 108, 20 N. W. 2d 719.

[8] *Supra,* footnote 2, at page 47.

before proceeding with the trial. . . . [Citing the fore-runner of sec. 955.09, Stats.]" [9]

Sec. 955.09(3), Stats., provides as follows:

"(3) Defenses and objections based on defects in the institution of the proceedings, insufficiency of the information or indictment, invalidity in whole or in part of the statute on which the prosecution is founded, or the use of illegal means to secure evidence (except confessions) must be raised before trial by motion or be deemed waived. . . ."

In *Hanley,* the court stated that, "[i]n entering his plea in abatement, [comparable to a motion to dismiss under the present sec. 955.09(1), Stats.] relator acknowledged and submitted to the jurisdiction of the municipal court." [10]

The opinion further provided that:

"At the time the writ was filed in the instant case, relator had appeared in the municipal court and entered a plea of abatement, and upon the overruling thereof, a plea of not guilty. Jurisdiction to try an offender for a crime of which the court has jurisdiction is obtained by his appearance in court, and by pleading guilty or not guilty, jurisdiction of his person is conferred on the court." [11]

When the defendant entered his plea of not guilty on November 21, 1963, and his plea of guilty after four days of trial he did not object to the trial court's jurisdiction over his person.

By pleading guilty to the charges defendant did not necessarily waive his right to jurisdictional defenses. In *Hawkins v. State,* [12] this court stated:

"It appears to be the general rule, that a plea of guilty, voluntarily and understandingly made, constitutes a

---

[9] *Supra,* footnote 6, at page 139.

[10] *Supra,* footnote 7, at page 112.

[11] *Id.* at page 113.

[12] (1965), 26 Wis. 2d 443, 132 N. W. 2d 545.

waiver of nonjurisdictional defects and defenses, including claims of violation of constitutional rights prior to the plea. As the plea itself provides the basis for conviction no evidence need be introduced, and the right to a trial free of evidence illegally obtained is forfeited." [13]

Also, in *Pillsbury v. State*,[14] this court said that, ". . . [o]ne cannot waive lack of jurisdiction of the subject matter or confer it on a court by consent." [15] The opinion went on to define "subject matter jurisdiction" as follows:

". . . Criminal jurisdiction of the subject matter is a power of a court to inquire into the charge of the crime, to apply the law, and to declare the punishment in the court of a judicial proceeding and is conferred by law." [16]

But here as in *Raskin* the defendant submitted to the jurisdiction of the court over his person by his initial plea and his later plea, both made without making or reserving his objection to the court's personal jurisdiction.

In *Raskin*, this court also noted that a defendant submits to the personal jurisdiction of the court if the defendant himself invokes that jurisdiction by asking for affirmative assistance of that court.[17]

The record in the present case reveals that when defendant appeared in court on November 14, 1963, his counsel made two motions: (1) Counsel moved for dismissal of the informations and remand to the county court for a preliminary examination; and (2) counsel moved for a reduction in the amount of bail. In making the motion for reduction in bail, counsel indicated to the court that there was no complaint or warrant on file to indicate who made the accusations against defendant

---

[13] *Id.* at page 448.

[14] (1966), 31 Wis. 2d 87, 142 N. W. 2d 187.

[15] *Id.* at page 94.

[16] *Id.*

[17] *Raskin, supra*, footnote 2, at pages 47, 48.

which would justify such a high bail. However, the record does not reveal that on this date counsel in any way challenged the jurisdiction of the trial court over the person of defendant.

We conclude that the defendant submitted to the jurisdiction of the trial court over his person and waived any objection he may have had thereto.

As to the defendant's contentions about the missing complaints and warrants, the trial court found that on October 12, 1963, a member of the Wauwatosa police department appeared at the office of the district attorney of Milwaukee county and signed two complaints against defendant; that following the signing of the complaints, the warrants were issued; that the two complaints remained in the office of the clerk of courts and the warrants were delivered to and taken by Milwaukee county law enforcement officers; that thereafter application was made to the United States district court for the Eastern district of Wisconsin for issuance of a fugitive warrant which was issued; that a short time later, the defendant, his wife, and one other codefendant were taken into custody by federal officers in North Hollywood, California.

The trial court further found that the three defendants waived extradition and were returned to Milwaukee; that the warrants were returned to the office of the district attorney of Milwaukee county by the officers in whose hands they had been placed on or about October 12, 1963; that these warrants remained in the office of the district attorney until sometime in August, 1967, at which time they were placed in defendant's court file. The trial court also found that the criminal complaints supporting the warrants had found their way into the district attorney's office and were not placed in defendant's court file until August of 1967.

None of these findings is against the great weight and clear preponderance of the evidence. Because the defendant submitted to the jurisdiction of the court we do

not reach the question of what effect, if any, the temporary misplacement of the complaints and related warrants may have had.

The second issue presented on this review is whether the defendant's plea of guilty was voluntarily and understandingly made.

In *State v. Reppin,*[18] this court adopted the "manifest injustice" test as set forth in the American Bar Association Project on Minimum Standards for Criminal Justice—Pleas of Guilty.[19] Those standards provide that the court should permit a guilty plea to be withdrawn whenever the defendant proves that: "(3) the plea was involuntary . . . ." Defendant contends that his plea was changed to guilty because of fear and not out of free choice, *i.e.,* that it was involuntary. He claims that the only reason he pleaded guilty was to save his wife from a long prison term.

As previously indicated, the record in this matter reveals that the defendant did not initially plead guilty to the offenses charged. On November 21, 1963, defendant originally pleaded not guilty. Not until four days of trial had elapsed in May of 1964 did the defendant request leave to change his plea to guilty. The actual circumstances of that change of plea are shown dramatically by the actual trial record. During the testimony of one of the state's witnesses, Attorney Dominic Frinzi, representng defendant, requested a five-minute conference because of a "new development." After this conference the following occurred:

"*Mr. Frinzi:* Your Honor, before the jury returns, on behalf of the defendant John Belcher, at this time I'd like to beg leave of the court to withdraw our plea of not guilty on both counts, the robbery armed, and the attempted murder; and at this time we are prepared to enter a plea of guilty on both counts.

[18] (1967), 35 Wis. 2d 377, 385, 151 N. W. 2d 9.
[19] (Tentative Draft, February, 1967), Part II, sec. 2.1 (a) (ii) (3), pp. 9, 10.

"I'd like to also ask the court whether the court wants the record to show that this act is the free and voluntary act of the defendant for the purposes of the record.

"*The Court:* Yes.

"*Mr. Frinzi:* Mr. Belcher, as your lawyer, you have heard the statement I have just made to the court?

"*Defendant John Belcher:* Yes.

"*Mr. Frinzi:* Now, is it your wish and desire that we withdraw the plea of not guilty in both counts, the armed robbery and the attempted murder, and enter a plea of guilty on both counts?

"*Defendant John Belcher:* That's right.

"*Mr. Frinzi:* You understand that under the law of the state of Wisconsin, the Constitution of the state of Wisconsin, and the United States Constitution, that you have a right to have both these matters determined by a jury of your peers?

"*Defendant John Belcher:* Correct.

"*Mr. Frinzi:* Knowing that, is it still your desire to withdraw your plea of not guilty and enter pleas of guilty on both counts?

"*Defendant John Belcher:* It is.

"*Mr. Frinzi:* And you are doing this freely and voluntarily; is that correct?

"*Defendant John Belcher:* That is correct.

"*Mr. Frinzi:* And no promises or threats have been made to you in order to obtain this plea; is that correct?

"*Defendant John Belcher:* That's correct.

"*Mr. Frinzi:* That is it, Your Honor."

Thereafter all of the other male defendants changed their pleas. At the request of the assistant district attorney the court inquired as to the defendant's guilty plea:

"*The Court:* Mr. Belcher.

"(Defendant John Belcher stands.)

"*The Court:* Were there any inducements offered to you in order to get you to change your pleas of guilty?

"*Defendant John Belcher:* No, sir.

"*The Court:* Of not guilty to guilty?

"*Defendant John Belcher:* No.

"*The Court:* And nobody has made any statements to you as to what the district attorney would recommend or what the court would do?

"*Defendant John Belcher:* None whatsoever.

*"The Court:* You realize the seriousness of the offense and what the punishment is for each crime, don't you? *"Defendant John Belcher:* I do. *"The Court:* That is all."

Thereafter, defendants were found guilty.

At the postconviction hearing, defendant testified that because of the psychological coercion and the promises of Attorney Goldsmith at the trial, he found it necessary to plead guilty in order to have his wife get probation. However, Attorney Goldsmith testified for the state that he never made threats or guarantees to defendant as to what would happen to his wife if he pleaded guilty. He stated that he told defendant that whether or not he pleaded guilty it was his opinion that Mrs. Belcher would be placed on probation.

The trial court's memorandum opinion, dated June 18, 1968, stated in part as follows:

"It is the position of the defendant that his plea was not voluntary in that it was made for the purpose of assuring that his then wife, Janice Belcher, would be placed on probation; and that if he had not entered a plea of guilty and if Janice Belcher was found guilty by the jury she would receive a substantial sentence to the Wisconsin Home for Women. Aside from the fact that we have been long associated upon the bench with the Hon. Carl H. Daley and are satisfied that his professional standards would not permit him to enter into any pre-sentence bargain, the record discloses affirmatively that all defendants were clearly and unmistakenly advised throughout the trial and before entry of their pleas of guilty that no commitment of any nature had been made by the trial judge, or by any one else. Mr. Belcher was advised by Mr. Max Goldsmith, an attorney of the highest ability and competence, counsel for Janice Belcher, that in his opinion no matter whether Janice Belcher was found guilty by way of a plea or by verdict of a jury she would receive probation."

As to the credibility of defendant's witnesses at the postconviction hearing, the trial court stated:

"The recollections of the witnesses called by the defendant were far from crystal clear, except as to matters favorable to him. We observed each witness on the stand and his and her manner of testifying. Where there is a conflict between their testimony and that of any other witness their testimony is rejected. We are satisfied, and so find and determine, that there were no promises made by any one to John Belcher; there was no commitment, prior to the plea of guilty, made by the trial judge; there was no agreement by the prosecuting attorney that he would act favorably should a guilty plea be entered; there were no threats made by anyone; there were no inducements offered by counsel for the defendants or by anyone else. The most that was said by any defense counsel was that, should there be guilty pleas, it was believed that the two women would be placed on probation."

Continuing, the court stated that:

"It may be that in entering his plea of guilty John Belcher was motivated by a desire to see his wife avoid incarceration. It may properly be assumed that his desire was also shared by his wife, Janice. She did receive probation and is now beyond all reach of the law insofar as the events of October 11, 1963, are concerned. Both received precisely what they wanted. Now, the defendant says this was wrong. Wrong not by reason of any threats, promises or inducements made by defense counsel, by the court or by the prosecution; but wrong because, though free and voluntary, the choice was one he should not have made. Upon reflection, he tells us now, he should have forced his wife to take her chances on going to prison, while at the same time he should have taken the gamble of his going free on a not guilty verdict by the jury."

Thus, the trial court found as a matter of fact that there was no psychological coercion; that no threats were made to defendant; and that the guilty pleas were freely and voluntarily entered. These findings are not against the great weight and clear preponderance of the evidence.

As a third issue, defendant presents three other questions as to nonjurisdictional errors occurring in the trial,

*i.e.,* the denial of a preliminary hearing, the denial of a separate trial, and the amount of bail.

*Hawkins v. State* [20] holds that a plea of guilty, voluntarily and understandingly made, constitutes a waiver of nonjurisdictional defects and defenses.[21]

Defendant's pleas were voluntarily and understandingly made and accordingly we cannot properly consider these allegations of error.

*By the Court.*—Judgment and orders affirmed.

[20] *Supra,* footnote 12.

[21] *Id.* at page 448. *See State v. Lampe* (1965), 26 Wis. 2d 646, 648, 133 N. W. 2d 349; *McLaughlin v. State* (1966), 32 Wis. 2d 124, 131, 145 N. W. 2d 153.