FLOWERS, Plaintiff in error, v. STATE, Defendant in error.*

*No. State 102. Argued June 4, 1969.—Decided June 27, 1969.*
(Also reported in 168 N. W. 2d 843.)

---

* Motion for rehearing denied, without costs, on September 8, 1969.

354

356

For the plaintiff in error there were briefs and oral argument by *James H. McDermott*, state public defender.

For the defendant in error the cause was argued by *Theodore J. Hodan*, assistant district attorney of Milwaukee county, with whom on the brief were *Robert W. Warren*, attorney general, and *E. Michael McCann*, district attorney.

HEFFERNAN, J. Defendant claims that the trial judge erroneously admitted into evidence a statement made to police officers at the scene of the crime. A hearing was held out of the presence of the jury to determine the admissibility of the utterance that Flowers made to Officer Shadof. Shadof testified that Flowers was placed under arrest, that while they were waiting for the wagon to come Flowers was engaged in a conversation with Sosinski, the other officer, that Flowers walked over to

Shadof and spontaneously stated that he did not understand why the other officer was so concerned, since he was not trying to have intercourse with the girl. He volunteered the statement that he was "only" engaged in the act of cunnilingus.

Shadof testified that this statement was not made in response to interrogation. Flowers neither admitted nor denied giving the statement, since it was his story that he was so intoxicated that he remembered nothing from the time he went to sleep on the couch at his residence until he awoke in jail the next morning.

The trial court made the finding:

"Let the Court record indicate that the Court has had a hearing in Chambers on this particular problem regarding certain decisions of the Wisconsin and U. S. Supreme Court and has ruled that the said testimony regarding a remark made by the defendant at the scene of the arrest was free and voluntary, without duress or coercion and was a spontaneous outburst on the part of the defendant without any interrogation by this officer or other officers at the scene."

The admission of this testimony was objected to by defendant's counsel on the basis of *Escobedo v. Illinois* (1964), 378 U. S. 478, 84 Sup. Ct. 1758, 12 L. Ed. 2d 977, and *Miranda v. Arizona* (1966), 384 U. S. 436, 86 Sup. Ct. 1602, 16 L. Ed. 2d 694. *Escobedo* is, of course, not applicable, since we have held in *Browne v. State* (1964), 24 Wis. 2d 491, 129 N. W. 2d 175, 131 N. W. 2d 169, that it is to be confined to its facts. Moreover, the rule of *Escobedo* has been amplified, if not clarified, by *Miranda*. Although the arrest was prior to the decision in *Miranda* on July 13, 1966, the trial was subsequent thereto, and the *Miranda* ruling is applicable in all trials commenced after the mandate.

Although *Miranda* is applicable to all custodial interrogation, it is not applicable where a statement is volunteered prior to interrogation, even though the declarant

is in custody. *Strait v. State* (1969), 41 Wis. 2d 552, 563, 164 N. W. 2d 505; *State v. Miller* (1967), 35 Wis. 2d 454, 151 N. W. 2d 157.

In *Miranda,* page 478, the United States Supreme Court stated:

"There is no requirement that police stop a person who enters a police station and states that he wishes to confess to a crime, or a person who calls the police to offer a confession or any other statement he desires to make. Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today."

We are satisfied that, under the state of the record, the court properly found the confession to be volunteered and not subsequent to custodial interrogation and therefore admissible even though the *Miranda* warnings were not given.

We are also satisfied that, in finding the confession was voluntary, there was compliance with the procedure outlined in *State ex rel. Goodchild v. Burke* (1965), 27 Wis. 2d 244, 133 N. W. 2d 753.

Defendant also claims that the trial judge erred in that he failed to instruct the jury that intent was an element of the crime. We do not agree. The statute in question reads:

"944.11 **Indecent behavior with a child.** Any of the following may be imprisoned not more than 10 years:
 "(1) . . .
 "(2) Whoever takes indecent liberties with the privates of any person under the age of 18; or
 "(3) . . ."

Defendant claims that, since this is a crime of moral turpitude, proof of criminal intent is an essential element of the crime. He cites in support of that proposition 22 C. J. S., *Criminal Law,* p. 100, sec. 30:

"The legislature may make an act criminal without regard to the intent or knowledge of the doer. Whether

it has done so is to be determined from the language and purpose of the statute. Where the statute is silent, knowledge and criminal intent are generally essential if the crime involves moral turpitude, but not if it is malum prohibitum."

We need not herein, however, go to that rationale, for the statutes are not silent. Sec. 939.23 (1), Stats., provides:

"When criminal intent is an element of a crime in the criminal code, such intent is indicated by the term 'intentionally', the phrase 'with intent to', the phrase 'with intent that', or some form of the verbs 'know' or 'believe'.

As stated by Mr. Justice HALLOWS in the minority opinion in *State v. Alfonsi* (1967), 33 Wis. 2d 469, 486, 147 N. W. 2d 550:

"Whenever the code intends a crime to include a specific criminal intent, it so provides or exact language is used which comes under sec. 939.23, Stats., which defines when intent is an element of a crime."

No attempt has been made herein, as there was in *Alfonsi*, to equate the language of the statute with a requirement of intent. Wisconsin has abolished all common-law crimes, and the element of intent of the statutory crimes is only necessary when specified by statute. The trial judge did not err in this respect.

Nor do we find that the trial judge erred in failing to instruct on intoxication as negating intent, for, as pointed out above, specific intent is not a required element of the crime.

Defendant also claims that the trial judge erred in failing to instruct on the question of whether the intoxication made it physically impossible to commit the crime, as required by *Ingalls v. State* (1880), 48 Wis. 647, 651, 4 N. W. 785. We doubt that such instruction would have been proper in view of the undisputed testimony that Flowers was at the place alleged. The *Ingalls* rule, as we understand it, goes to the:

". . . right of a person accused of crime to show that at the time of its commission he was physically incapable of committing it . . . intoxication is not shown for the purpose of excuse or mitigation of the offense charged, but as evidence tending to show that he was not present and did not commit the acts constituting the offense."

This evidence is almost akin to alibi in that it shows the inability to commit the crime, not by being "elsewhere" as in alibi, but as being:

". . . temporarily prostrated by drunkenness, so as to render it highly improbable that he could have been present at the place . . . or . . . he could have done what the evidence shows was done by those who committed the [crime]." *Ingalls, supra,* page 651.

It was not error to fail to give this instruction. Moreover, as we read the record, the trial judge, in refusing to instruct on intent, stated that he would allow the defense to show physical incapacity by reason of intoxication. However, no instruction was requested in regard to intoxication causing physical incapacity. The defendant has no standing to voice this objection.

During the course of the trial the prosecutor made a remark that Flowers considered insulting to his wife, who was then on the stand as a witness. Flowers asked to approach the bench. Judge COFFEY excused the jury, and thereupon Flowers expressed his resentment at what he considered to be improper remarks of the prosecutor. The following exchange is all that appears of record in regard to Judge COFFEY'S determination to station a deputy behind Flowers for the balance of the trial.

"(Jury excused from courtroom)
*"Defendant:* With all due respect to the Court, Your Honor and the prosecutor, he has at several times today made accusations about things that I myself didn't like and I certainly didn't like that. Now this witness is my wife and I wish he would treat it as such because any further stuff like that—I mean we haven't been able to get—as far as I am concerned—this trial hasn't been

able to show the defendant has a chance to prove anything yet. By this man. I wouldn't like any more remarks about my wife any more.

"I wish you would tell him that he shouldn't do that. That remark he made is unnecessary and uncalled for.

"*Court:* Please sit down Mr. Flowers. Mr. Deputy, I want you to sit behind this man at all times. During the entire trial, from its beginning to its end.

"Call the Jury back.

" (Jury back in box) "

The defendant now claims that the stationing of a deputy behind him is inconsistent with the presumption of innocence that attaches to a defendant's status until a verdict is returned, and that so placing a deputy was similar to those cases where defendants have been shackled or manacled when brought before the jury.

Defendant relies upon the statement in *Way v. United States* (10th Cir. 1960), 285 Fed. 2d 253, 254, which this court quoted in *Sparkman v. State* (1965), 27 Wis. 2d 92, 97, 133 N. W. 2d 776:

" 'It is the general rule that under ordinary circumstances freedom from handcuffs, shackles, or manacles of a defendant during the trial of a criminal case is an important component of a fair and impartial trial. In other words, such procedure should not be permitted except to prevent the escape of the accused, to prevent him from injuring others, and to maintain a quiet and peaceable trial. . . .' "

No doubt a criminal defendant is entitled to not only a fair trial, but the appearance of a fair trial, and restraint not necessary to maintain order, decorum, and safety in the courtroom is violative of that principle.

While the record does not show that the action taken was in fact necessary, neither does it show that the order of the judge in any way prejudiced the defendant in the eyes of the jury. Nor did the defendant object to this action by the trial court either at the time of trial or in his motions after verdict. Consequently, the defendant cannot ask this court to review the issue as

a matter of right. *State v. Doyle* (1968), 40 Wis. 2d 461, 465, 162 N. W. 2d 60; *Bradley v. State* (1967), 36 Wis. 2d 345, 359, 153 N. W. 2d 38, 155 N. W. 2d 564; *Gaertner v. State* (1967), 35 Wis. 2d 159, 169, 150 N. W. 2d 370; *McLaughlin v. State* (1966), 32 Wis. 2d 124, 130, 145 N. W. 2d 153, certiorari denied, *McLaughlin v. Burke,* 389 U. S. 862, 88 Sup. Ct. 117, 19 L. Ed. 2d 130. It does not appear from the record how close the deputy was sitting to the defendant, whether the deputy was armed, or how he conducted himself. Since these facts are necessary to determine whether the deputy's presence was prejudicial to the defendant, this court will not exercise its discretion to review this issue. *Bradley v. State, supra,* pages 359, 359a, held that this court will exercise its discretion to review claims of constitutional error not raised in trial court only if it appears to be in the interest of justice to do so *and* if there are no factual issues that need resolution.

It is within the discretion of the trial court to order the defendant restrained during the trial. *Sparkman v. State* (1965), 27 Wis. 2d 92, 96, 133 N. W. 2d 776. A trial judge, of course, should not order a defendant restrained unless he has in fact exercised his discretion and set forth his reasons in the record. This court is unable otherwise to determine whether the trial judge has abused his discretion. *State v. Hutnik* (1968), 39 Wis. 2d 754, 764, 159 N. W. 2d 733. Many cases uphold the discretion of trial courts to restrain defendants. In *People v. Burwell* (1955), 44 Cal. 2d 16, 279 Pac. 2d 744, certiorari denied, *Burwell v. California,* 349 U. S. 936, 75 Sup. Ct. 788, 99 L. Ed. 1265, it was held that the transporting of defendants to the courtroom in handcuffs and the stationing of an armed guard at the door was a reasonable precaution since they had been previously convicted of violent crimes and one had written a letter stating that he planned to escape. In *State v. Layton* (1950), 217 La. 57, 46 So. 2d 37, certiorari denied, *Layton v. Louisiana,* 340 U. S. 839, 71 Sup. Ct. 26,

95 L. Ed. 616, it was not an abuse of discretion to have armed deputies in the courtroom when it appeared they were for crowd control rather than for guarding the defendant. Also, in *People v. Harris* (1950), 98 Cal. App. 2d 662, 220 Pac. 2d 812, it was deemed a reasonable precaution to have one of the prison guards remain in the courtroom to guard the defendant, since the accused was an inmate who had been convicted of violent crimes. *Fowler v. Grimes* (1944), 198 Ga. 84, 31 S. E. 2d 174, certiorari denied, 323 U. S. 784, 65 Sup. Ct. 266, 89 L. Ed. 626, permitted a trial court to allow a United States marshal to sit near the defendant during a state trial because the defendant had already been convicted of a federal crime.

We believe that the trial judge herein, in determining to seat a deputy near the defendant, should have stated on the record his reasons for the exercise of such discretion. However, we have no evidence that the deputy was so close as to be prejudicial or that his attitude reflected the court's possible opinion that the defendant was a dangerous person or guilty of the crime charged. We, therefore, conclude that the conduct of the trial judge herein was, at the most, harmless error. There is no evidence of prejudice to the defendant resulting therefrom or that the propinquity of the deputy to the defendant in any way affected the fact-finding process of the trial. The error was nonprejudicial and harmless. *Chapman v. California* (1967), 386 U. S. 18, 23, 87 Sup. Ct. 824, 17 L. Ed. 2d 705; *Hayes v. State* (1968), 39 Wis. 2d 125, 134, 158 N. W. 2d 545.

Defendant also alleges that the trial judge played a prosecutory role in the course of the trial because of his comments in the presence of the jury and his admonitions to defense counsel. We have carefully examined the record. On occasion, the comments of the judge evince impatience with the conduct of the trial that were not in all instances unjustified. While, at an optimum, a trial judge should abstain from all comments

or questions that would give the appearance of a pre-judgment of guilt or hostility toward the defendant or his counsel, we see nothing herein of that nature which would require a reversal. In *State v. Nutley* (1964), 24 Wis. 2d 527, 562, 129 N. W. 2d 155, we set forth the standard for determining whether the conduct of a trial judge was such as to deny a fair trial. We said:

". . . a trial court may question a witness called by the parties in order to clarify received testimony, *providing the court does not overtly express his view of the matters in issue.* While the court cannot function as a partisan, it may take necessary steps to aid in the discovery of truth." (Emphasis added.)

The defendant now claims that his trial counsel's failure to timely object to the conduct of the trial, particularly in regard to the stationing of the deputy, is evidence that he was denied effective counsel. While a hindsight view of a trial record almost always reveals action by counsel that should have been omitted and action omitted that would better have been taken, we see no evidence from the record before us that the trial was handled in other than a highly competent and professional manner. The test, as we have said, is whether the representation was so inadequate as to amount to no counsel at all and to reduce the trial to a sham and a mockery of justice. *State v. Cathey* (1966), 32 Wis. 2d 79, 86, 145 N. W. 2d 100. Certainly, the conduct of the trial attorney herein cannot be so characterized. Competent counsel was furnished the defendant.

It is clear that the preliminary examination was adjourned for more than ten days on more than one occasion, without the consent of the defendant, as required by sec. 954.05 (1):

"954.05 **Adjournments of hearing.** (1) The magistrate may adjourn the examination from time to time, but not exceeding 10 days at one time without the consent of the defendant, and to any place in his county, and the defendant shall be committed in the meantime unless he is bailed."

However, the record also makes it clear that a number of delays were occasioned by defendant's conduct. This fact gives weight to the trial judge's conclusion that the defendant was attempting to stall the trial. Be that as it may, the defendant first raised the objection of loss of jurisdiction on November 16, 1966, prior to trial but almost four months after pleading to the information. In the recent case of *Logan v. State* (June 6, 1969), ante, p. 128, 168 N. W. 2d 171, this court held that adjournment of the preliminary examination for more than ten days without the defendant's consent results in a loss of jurisdiction over the person of the defendant and not of the subject matter of the action and that any objection to this lack of jurisdiction is waived when the defendant pleads to the information. *Belcher v. State* (1969), 42 Wis. 2d 299, 307, 166 N. W. 2d 211, adhered to the same reasoning:

"Jurisdiction over the person can be conferred by consent of the defendant, or a defense based on the lack of personal jurisdiction can be *waived* by pleading to the information without making proper objection."

The defendant herein waived his objection to the jurisdiction of the court over his person by his plea to the information on July 25, 1966.

The evidence, we are convinced, was sufficient to support the verdict of guilty. The evidence and testimony of Sandra at the trial was unequivocal, although it was contradicted by prior inconsistent statements. Her testimony of the defendant's conduct was corroborated by the police officers' testimony of the position of defendant's face and mouth in relation to Sandra's genitalia. While no one but Sandra could testify that the act of cunnilingus was in fact performed, all of the evidence is probative of guilt and there is no reasonable hypothesis which would lead to any other conclusion. We are satisfied that the only questions were those of credibility, which were for the jury to resolve. They chose to believe

the police and the prosecutrix. The defendant offered no explanation of his conduct. The testimony is clearly sufficient to support a finding of guilt.

*By the Court.*—Judgment affirmed.